HOMER C. GARDNER, Appellant, *v.* JOHN J. GINTHER and Others, Purporting to Act as a Board of Education of an Alleged Central School District No. 1 of the Towns of Sweden, Ogden, Parma and Clarkson, Monroe County, and Clarendon and Murray, Orleans County, and Others, Respondents.

Fourth Department, May 6, 1931.

*Leon A. Plumb* [*William MacFarlane* of counsel], for the appellant.

*Mann, Strang, Bodine & Wright* [*James Mann* of counsel], for the respondents.

*Ernest E. Cole* [*Irwin Esmond* of counsel], for the Commissioner of Education, *amicus curiæ.*

*Hamilton Ward, Attorney-General* [*Amos D. Moscrip, Assistant Attorney-General,* of counsel], *amicus curiæ.*

*James G. Greene,* for the New York State Rural School Improvement Society, *amicus curiæ.*

EDGCOMB, J. Section 180 of the Education Law (as added by Laws of 1914, chap. 55) reads as follows: " The Commissioner of Education is hereby authorized and empowered to lay out in this State in any territory exclusive of a city school districts conveniently located for the attendance of scholars and of suitable size for the establishment of central schools to give instruction usually given in the common schools and in high schools, including instruction in agriculture."

Pursuant to the provisions of this section, the Commissioner of Education of the State of New York laid out a central school district in the towns of Sweden, Ogden, Parma and Clarkson, Monroe county, and Clarendon and Murray, Orleans county. Thereafter, at a meeting of the inhabitants of said district, pursuant to the provisions of section 182 (as added by Laws of 1914, chap. 55) of the Education Law, a resolution was adopted to organize the district as laid out by the Commissioner, and five members of a board of education were elected. The board subsequently adopted a budget for the ensuing school year, and prepared an assessment roll of the taxable property within the district, and levied and assessed a tax thereon, and issued a warrant for its collection. Plaintiff was assessed upon such roll, and a tax of twenty dollars and nineteen cents was levied against him.

As such taxpayer, plaintiff brings this action to declare section 180 of the Education Law unconstitutional, and to have it judicially

determined that the tax assessed against him is illegal and void, and to restrain the members of the board of education and the collector of the district from discharging the duties of their respective offices.

It has been found that by reason of the closing of the high school or academic department, which had for years been maintained by the State in connection with the Brockport Normal School, students from the village of Brockport and surrounding territory were left without high school facilities. Accordingly, after " a careful and painstaking investigation of the educational requirements of the inhabitants within the territory of the village of Brockport and that adjacent thereto, the manner in which such territory was circumstanced with respect of highways and transportation facilities, and following an intensive discussion of the requirements of the inhabitants of such territory and investigation thereof by the inhabitants themselves," the Commissioner of Education of the State of New York in good faith laid out the school district in question.

Numerous objections to the validity of the formation of the district, and to the tax assessed against the plaintiff, are set forth in the complaint. Upon this appeal, however, appellant has contented himself, with one exception, with an attack upon the validity of section 180 of the Education Law, based largely upon the ground that it is unconstitutional. We may, therefore, confine our discussion to the objections raised by appellant on this appeal.

The court always approaches the decision of a constitutional question with a feeling of grave responsibility. Conflicts between the co-ordinate branches of the government are not pleasant. Nevertheless, a solemn duty rests upon the court to uphold the fundamental law of the land, and to set aside any statute which clearly transcends the provisions of the Constitution.

To justify the court, however, in declaring a statute invalid, the conflict between the act and the Constitution must be clear and certain. Every presumption favors the validity of the statute. If there is a reasonable doubt, the act should be upheld. (*People ex rel. Cotte* v. *Gilbert*, 226 N. Y. 103, 106; *People ex rel. Henderson* v. *Supervisors*, 147 id. 1, 15, 16; *People* v. *Budd*, 117 id. 1, 29; *People ex rel. City of Rochester* v. *Briggs*, 50 id. 553, 558; *Whitney* v. *California*, 274 U. S. 357, 371; *Ogden* v. *Saunders*, 12 Wheat. 213, 270.)

Appellant's chief attack upon the constitutionality of the act under which this school district was formed rests upon a claim that it transfers legislative power to the Commissioner of Education.

The legislative power of the State is vested by the Constitution

in the Senate and Assembly (Art. 3, § 1), and the Legislature cannot delegate such power to any one else. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121, 138; *People ex rel. Unger* v. *Kennedy*, 207 id. 533, 544; *Barto* v. *Himrod*, 8 id. 483.)

Chief Justice MARSHALL said, in *Wayman* v. *Southard* (10 Wheat. 1, 42): "It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative."

Appellant urges that the laying out of this district was exclusively a legislative function, and that the Legislature should have prescribed the limits of the district, rather than to have left that duty to the Commissioner of Education.

It is not always easy to distinguish between a legislative and administrative act. There is no hard and fast rule by which the two can be determined. The line of demarkation is sometimes hard to draw. A most interesting and illuminating discussion of this subject will be found in the opinion of Chief Judge CULLEN in *Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Company* (191 N. Y. 123). Judge CULLEN has cited and discussed many cases in this jurisdiction and in the Federal courts where statutes which have established principles or rules and left the details or execution to various officials or bodies, have been held valid. Space will not permit a reference to all such cases. A brief mention of several will illustrate the extent to which the courts have gone in upholding statutes which delegate to public commissions or officials power to determine and put into effect many things.

In *Matter of Gilbert Elevated R. Co.* (70 N. Y. 361) it was claimed that the Rapid Transit Act (Laws of 1875, chap. 606) was unconstitutional because it gave to the commissioners appointed under the act authority to determine what streets the road should be built upon, and the form of the structure, and to make rules for the operation of the trains. Chief Judge CHURCH, writing for the court, said (p. 374): "The Legislature had the power to determine all these questions itself, but I am not aware of any rule which forbids the Legislature from referring such questions to a subordinate tribunal. There is no prohibition in the Constitution itself, express or implied, while the practice of the government has been uniformly in favor of referring analogous questions."

In *People* v. *Long Island R. R. Co.* (134 N. Y. 506) it was held that a statute (Laws of 1884, chap. 439, § 3) which gave to the Supreme or County Court authority to order gates to be erected at a railroad crossing did not confer legislative power upon the courts, and was not violative of the Constitution.

Chapter 493 of the Laws of 1892, relating to the construction of highways extending through two or more towns in the same county, provides that the Supreme Court, upon presentation of a petition, shall, if satisfied that the road was necessary for public welfare and convenience, make an order appointing commissioners to determine the cost of construction. It was held in *Citizens' Savings Bank* v. *Town of Greenburgh* (173 N. Y. 215) that this statute did not violate the Constitution by conferring non-judicial power upon the court.

In *Buttfield* v. *Stranahan* (192 U. S. 470) the court had before it an act of Congress (29 U. S. Stat. at Large, 604) which prohibited the importation of tea which was inferior to standards to be established by the Secretary of the Treasury upon the recommendation of a board of experts, which that official was authorized to appoint. It was urged that the act was void because it transferred legislative power to an administrative officer. It was said: " Congress legislated on the subject as far as was reasonably practicable, and from the necessities of the case was compelled to leave to executive officials the duty of bringing about the result pointed out by the statute. To deny the power of Congress to delegate such a duty would, in effect, amount but to declaring that the plenary power vested in Congress to regulate foreign commerce could not be efficaciously exerted."

There can be no doubt that the Legislature itself could have solved the problem which it turned over to the Commissioner, but that would not have been feasible. From a practical standpoint the administrative head of the Education Department is in a far better position to lay out the various school districts of the State than is the Legislature, which is in session but a few months each year, and which is busy with thousands of other matters. The nature of the school to be maintained in any particular locality, as well as the territory which shall be included in any given district, is a matter of local interest, in which the State at large has no particular concern. Local needs can easily and satisfactorily be taken care of by leaving the details to the administrative head of the Education Department.

The present school system of this State had its origin in chapter 242 of the Laws of 1812, entitled " An Act for the establishment of Common Schools." That act created an officer known as Superintendent of Common Schools. It also provided for the election of town commissioners to superintend and manage the concerns of the schools within the town (§ VI). Section VII authorized and empowered the town commissioners " to divide their respective towns into suitable and convenient number of

districts, for keeping their schools, and to alter and regulate the same from time to time, as there may be occasion." This statute has been amended and enlarged from time to time until it has expanded into our present Education Law. For over one hundred years the Legislature has acknowledged the impracticability of fixing the territorial limits of the various school districts of the State, and has turned that duty over to various officials as a matter of school administration. Section 121 of the present act (as amd. by Laws of 1912, chap. 294) empowers a district superintendent to organize a new school district out of the territory of one or more districts within his supervision, whenever the educational interests of the community may require. Sections 123 (as amd. by Laws of 1914, chap. 154) and 124 provide for the alteration of the boundaries of school districts by the district superintendent. Section 128 (as added by Laws of 1930, chap. 206; superseding former sections 128 and 129) gives to any district superintendent authority to dissolve one or more districts, and to form a new district from such territory, or to unite the same with an adjoining district.

A few school districts have been created by direct legislative enactment. There are approximately ten thousand school districts in the State. Less than one per cent has been laid out by the Legislature. The history of our school system reveals the fact that for over a century practically all of the districts of the State have been laid out by some school officer or body under legislative authority. This practice has never been held violative of the mandates of the Constitution.

It is true that a repeated violation of a constitutional provision over a period of years without objection or question cannot make valid that which is repugnant to the fundamental law of the land. The plain mandates of the Constitution must prevail, no matter how long, or how often, or how universally they may have been dishonored. (*Matter of Wendell* v. *Lavin*, 246 N. Y. 115, 120; *Schieffelin* v. *Hylan*, 236 id. 254, 264; *People ex rel. Simpson Co.* v. *Kempner*, 154 App. Div. 674, 677; affd., 208 N. Y. 16.)

' Nevertheless, as a guide in passing upon the constitutionality of a statute, the court is justified in taking notice of a legislative policy which has existed for years, and which has been sanctioned by numerous statutes, and the validity of which has never been questioned by the courts. (*People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367, 376; *Muller* v. *Oregon*, 208 U. S. 412, 420.)

So far as I have been able to discover, the validity of this particular statute has never been passed upon by an appellate court. Its constitutionality, however, has been upheld by the Special Term on two occasions, once by Judge BREWSTER in *Lair* v. *Grant* (137

Misc. 470) and again by Judge CRAPSER in an unreported case connected with the organization of the Madrid central school district.

There are cases, however, in the appellate courts of this State which pass upon other provisions of the Education Law, and which, while not directly in point, tend, by analogy, to uphold the statute here under review.

*Bullock* v. *Cooley* (225 N. Y. 566) was a taxpayer's action brought to restrain the district superintendent of the first supervisory district of Nassau county from carrying out and enforcing an order made by him dissolving certain school districts, and adding the territory comprised in such districts to a union free school district, pursuant to the provisions of section 129 of the Education Law (now superseded by section 128, as added by Laws of 1930, chap. 206). That section authorized any school commissioner to dissolve one or more districts, and to form a new district from such territory, or attach it, or a portion thereof, to an adjoining district. The act of the Commissioner of Education was upheld.

The authority of the Commissioner of Education to dissolve common school districts and annex the territory thereof to a union free school district, under the same section, was upheld in *People ex rel. Cherry* v. *Graves* (219 App. Div. 563) and *People ex rel. Wood* v. *Graves* (225 id. 176).

In *Adriannsen* v. *Board of Education* (222 App. Div. 320; affd., 248 N. Y. 542) this court had before it a case where a district superintendent, acting under former section 129 of the Education Law, dissolved several common school districts and annexed the territory to a union free school district. While the constitutionality of the section was apparently not raised on the appeal, it was not entirely overlooked by this court, because Presiding Justice HUBBS, now Judge HUBBS of the Court of Appeals, says (at p. 324): " It is not suggested that the act of the Legislature in delegating to district superintendents of schools authority to dissolve school districts and to annex the territory thereof to another district under section 129 is unconstitutional and void."

If former section 129 of the Education Law, which imposed no restriction whatever on the act of the Commissioner of Education in dissolving a school district and forming a new one out of such territory, was not a delegation of legislative power, certainly the authority given to the same official under section 180, where, under the provisions of section 182, the inhabitants have something to say on the subject, does not transfer such power.

I think that the laying out of this district by the Commissioner of Education was an administrative and not a legislative act. If so, there has been no unlawful delegation of the power to legislate.

It is urged with much force that there is direct authority in the Constitution for the grant to the Commissioner of the power which he has exercised in this instance, and I am inclined to agree with that contention.

In 1925 the Constitution was amended by creating several new departments of State government, among others the Education Department. (Art. 5, § 2.) Section 4 of the same article makes the Regents of the University of the State the head of that department, and provides that the Regents shall appoint, and at pleasure remove, a Commissioner of Education, who shall be the chief administrative officer of the department. The Constitution did not create a new office; it simply changed the Commissioner of Education from a creature of the statute to a constitutional officer. This was done with full knowledge on the part of the electorate of the history of the school system of the State, and the powers which had for years been exercised by the Commissioner. Section 180 was in force at the time of the adoption of this amendment, and it would seem that the authority conferred by that section upon the Commissioner was confirmed by the People when they adopted the amendment.

After the amendment the Legislature amended section 90 of the Education Law (by Laws of 1927, chap. 153) so as to read as follows: " The office of Commissioner of Education is hereby continued. Subject to the general direction and control of the Regents of the University, he shall continue to have, exercise and perform the functions, powers and duties conferred or imposed by law upon the Commissioner of Education. He shall continue to exercise the judicial functions conferred by law upon the Commissioner of Education and, subject to rules of the Regents, to make, execute and issue in the name of the department such determinations, decisions, orders, notices and certificates as may be required for the exercise and performance of the functions, powers and duties conferred or imposed upon the department * * *." This act went into effect March 16, 1927, and everything which has been done in the instant case has been done since that date.

Article 9 of the Constitution requires the Legislature to provide for the maintenance and support of a system of free common schools, wherein all children of the State may be educated. Such duty includes the right to pass appropriate legislation to accomplish that purpose.

Appellant also urges that the section in question violates both the Federal and State Constitutions by denying to our citizens the equal protection of the law. Such contention is not sound.

This claim, as I understand it, is based upon the fact that the laying out of these districts is left to the discretion of the Commissioner; that he is permitted to determine not only whether the district shall be created, but, if so, what territory shall be included therein; that he can say one thing in one case, and another thing in another case, and that such a situation would result in a denial of equal protection of the law.

In this connection it must be remembered that section 182 gives to the people something to say on the subject of the formation of these districts, so that an arbitrary power to force a central rural school upon an unwilling community is not vested in the Commissioner of Education.

A practical administration of the school system demands that the State be divided into districts. Someone must have authority to determine what districts shall be established, as well as the boundaries thereof. Such privilege, of necessity, carries with it more or less arbitrary power, whether it be exercised by the Legislature or by some official or body. Of course, the discretion exercised by the Commissioner must be a legal discretion, and not a personal and arbitrary one, designed to further his own selfish purpose, as opposed to the welfare of the public. Had this district been laid out by the Legislature, I take it that no one could successfully complain that he had been deprived of equal protection of the law. Then how can such complaint be made now?

Judge SAWYER, the official referee before whom this case was tried, very pertinently says: " No person has an inherent, pre-existing right to require that the lines of his school district remain unchanged or that he be continued in one or excluded from another. He must under our law necessarily live in and have the advantages of some school district, but it may be from time to time changed by the Commissioner of Education as the convenience of scholars and suitability for educational purposes may in his judgment require. No one is deprived of the advantages of a school for his children nor a school district organized under the educational system of the State of New York in which to live."

Justice YOUNG, now on the Appellate Division, Second Department, says, in *Brown* v. *Bunselmeyer* (101 Misc. 625, 630): " Clearly, the inhabitants of one portion of the State have no vested right to have the same kind of school system as those of another portion, and, therefore, no personal liberty or liberty of action to attend the schools of the State is unlawfully interfered with."

Appellant also urges that the statute is incomplete, and, therefore, void, because it does not create any particular district by prescribing its boundaries, or define with any degree of accuracy

the form, size, population or assessed valuation of the property to be placed in such district, but leaves the matter in the air, so to speak, and that something more must be done in the future before the district comes into being.

While a statute may be made to take effect upon the happening of some future event, which may be certain or uncertain, it must be a law *in præsenti* when it comes from the hands of the Legislature. (*Barto* v. *Himrod*, 8 N. Y. 483, 490; *People ex rel. Unger* v. *Kennedy*, 207 id. 533.)

Article 6-B of the Education Law (as added by Laws of 1914, chap. 55), of which section 180 is a part, was a law the minute it was signed by the Governor. It provides the procedure by which a central school district could be formed. Such district, however, has no existence until the procedure prescribed by the statute has been followed. The procedure, however, is definitely fixed, and the statute itself is complete.

As well might it be argued that when the Public Service Commissions Law (Laws of 1907, chap. 429) left the Legislature, and was signed by the Governor, the statute was incomplete and invalid, and that there was no legal Commission, because the act left it to the Governor to appoint the Commissioners, and that such appointment must be made before the statute could become effective.

Judge SAWYER forcefully disposes of this objection when he says: " If the Legislature may constitutionally delegate the power to lay out and establish the school districts of the State, there can be no question but that the statute here attacked is in and of itself complete. The criticism in that regard is based upon the proposition that article 6-B of the Education Law does not within its own compass set aside those districts. It having lawfully delegated that power, the criticism fails."

This leaves for discussion the other objection raised by appellant that section 180 of the Education Law gives to the Commissioner of Education no power to lay out the district in question so as to include the village of Brockport. Attention is called to the word " rural " in the title of the article, " Central Rural Schools." It is urged that the word " rural " relates only to a sparsely settled community, and not to a village, and as the village of Brockport is included within the boundaries of the district, article 6-B does not apply to this situation, and does not authorize the formation of this district. It is suggested that article 6-C of the Education Law (as added by Laws of 1917, chap. 137), relating to central high school districts, applies to this situation, and that the method there laid down should have been followed, if it was desired to make a

separate school district out of this locality. The procedure prescribed by article 6-C is quite different from that provided by article 6-B.

It is not necessary to discuss whether the district could have been formed under article 6-C. No attempt was made to proceed under that article. The only question in which we are interested on this appeal is whether article 6-B, if constitutional and valid, is broad enough to give the Commissioner of Education power to lay out this district as it was laid out. The only limit which section 180 puts upon the nature of the territory to be included in the district therein provided for is that it must be exclusive of a city school district. By the use of such language it is apparent that the Legislature had in mind the formation of districts anywhere in the State, outside of the confines of our cities. We speak of our small hamlets and villages as " country " nowadays. The title of the article simply gives a name to the districts therein authorized. The use of the word " rural " in the title is not sufficient to exclude an incorporated village in such a district, in the face of the direct provision in the body of the article, which gives the Commissioner authority to lay out such a district " in any territory exclusive of a city."

I find no invalidity in the statute under which this school district was laid out, and I think that the judgment appealed from should be affirmed.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Judgment affirmed, with costs.