**SMITH, ET AL, Plaintiffs-Appellants, v RAY, ET AL, Defendants-Appellees.**

Ohio Appeals, Second District, Shelby County.

No. 137.   Decided April 26th, 1947.

514

Philip C. Ebeling, Dayton, Taylor Cummins and R. E. Boller, Jr., Sidney, for plaintiffs-appellants.

Hugh S. Jenkins, Attorney General, R. Brooke Alloway, Assistant Attorney General, attorneys for Superintendent of Public Instruction of the State of Ohio, Columbus, H. K. Forsyth, Sidney, and Knepper, White and Dempsey, Columbus, for The Board of Education of Shelby County School District, for defendants-appellees.

## OPINION

By THE COURT

This is an appeal on law from the judgment of the Common pleas Court of Shelby County, Ohio, denying injunctive relief to the plaintiffs-appellants.

This is an action in which the plaintiffs-appellants, who are electors and residents of the East Salem Rural School District of Shelby County, Ohio, sought to enjoin Kenneth C. Ray, Superintendent of Public Instruction of the State of Ohio, and the members of the Board of Education of Shelby County School District, from carrying into effect a plan of territorial organization of the Shelby County School Districts. The action was begun October 17, 1944.

The Board of Education of the Shelby County School District will hereinafter be referred to as the "County Board," and the Superintendent of Public Instruction of the State of Ohio will hereinafter be referred to as the "Superintendent."

On January 15, 1944, the County Board, pursuant to the provisions of §4831 GC (effective September 16, 1943), adopted its plan of organization for the Shelby County Schools. Before any other action was taken by the County Board, on February 29, 1944, the plaintiffs herein and other electors of the East Salem Rural School District of Shelby County filed their petition with the County Board, containing the signatures of more than 75 per cent of the qualified electors residing in such School District, requesting the transfer of a substantial part of said School District to the adjoining Sidney City School District, as provided by §4831-13 GC (effective September 16, 1943). After the petition was filed the County Board, on March 3, 1944, amended its plan of organization and transferred the territory as requested by such petition. The County Board duly published said plan of organization as amended, as required by §4831-2 GC. No publication was made of the original plan of organization adopted by the County Board on January 15, 1944. On April 28, 1944, the County Board, pursuant to the provisions of §4831-4 GC (effective September 16, 1943), transmitted its plan of territorial organization, as adopted on September 3, 1944, to the Superintendent of Public Instruction of the State of Ohio. Pursuant to the provisions of §4831-6 GC the Superintendent, on August 17, 1944, gave notice to the County Board that he had approved said plan of territorial organization, as submitted by the County Board, with certain modifications, stating in writing his reasons for such modifications. In the plan as modified by the Superintendent the territory which was requested to be transferred to the Sidney City School District was eliminated, and such territory, together with the territory in the Jackson Center Village School District and in the Perry Local School District, was placed in one School District.

On August 25, 1944, objections to said modification of said plan of organization were filed with the Superintendent by the Board of Education of the East Salem Local School District, and the Board of Education of the Perry Local School District. These objections were filed under the provisions of §4831 GC, which provides for a hearing on the objections. After the objections were filed the Superintendent, one of his assistants, and the Director of School Finance in the State Department of Education, conducted an investigation of the school situation in Shelby County and held a hearing. However, a second hearing was held on October 2, 1944, pursuant to the provisions of §4831-9 and §4831-10 GC. At this hearing

all three School Districts involved were represented by electors and were given an opportunity to state their views on the plan of organization.

On October 6, 1944, the Superintendent, pursuant to the provisions of §4831-11 GC, approved a plan of territorial organization of the School Districts under the supervision of the Shelby County Board of Education. The plan, as finally approved by the Superintendent, eliminated the East Salem Rural School District by transferring a part of said School District to the Jackson Center Village School District, and the remaining portion thereof to the Perry School District. Thereupon the Superintendent notified the County Board that he had approved a plan of organization as required by the provisions of §4831-11 GC, after which the County Board notified the Boards of Education of the Local School Districts, in compliance with the provisions of the last paragraph in said section.

It is contended that the County Board failed in one particular, to-wit: to publish its original plan of organization adopted on January 15, 1944, as required by §4831-2 GC. The original plan of organization was not published; however, the County Board did cause to be published the plan of organization as modified and adopted by it after the petition was filed containing more than 75 per cent of the qualified electors residing in the East Salem Local School District. **Sec. 4831-13 GC** (effective September 16, 1943), in part, provides:

"The proposed transfer of territory shall be included **in the forthcoming plan** of territorial organization of the School Districts **to be made and adopted under the provisions of section 4831 of the General Code.**" (Emphasis ours.)

Under the express provision of §4831-13 GC it was incumbent upon the County Board to include such transfer in the plan of territorial organization of the School Districts to be made and adopted by the County Board, as provided by **§4831 GC.** Accordingly, the plan, as amended, became the adopted plan of the County Board, under §4831 GC, which was the plan of organization required to be published under the provisions of §4831-2 GC.

It is urged that §4831-11 GC delegates to the Superintendent legislative power and, therefore, this statute is unconstitutional. This Section provides:

"Within sixty days after such hearing the superintendent of public instruction shall approve a plan of organization of

the local school districts under the jurisdiction of such county board of education. Such approved plan may be the original plan as submitted by the county board of education or any modification thereof, and such plan shall be final and no territory shall be transferred except in accordance with such plan of organization.

"Upon the approval of a plan of organization of local school districts under the jurisdiction of a county board of education, upon which a hearing has been held, the superintendent of public instruction shall notify the county board of education that he has approved a plan of organization of the local school districts and such notification shall be accompanied by the plan of organization approved by the superintendent of public instruction.

"Within fifteen days after a county board of education receives such approved plan of territorial organization of local school districts under its supervision it shall notify, in writing, the boards of education of local school districts under its supervision of the decision of the superintendent of public instruction relative to the plan of territorial organization of such local school districts."

It is true that the Legislature cannot delegate its authority. Belden v Union Central Life Insurance Company, 143 Oh St 329; State, ex rel, Foster v Evatt, 144 Oh St 65. The constitutional grant of power to the Legislature is found in Art. VI, Sec. 3 of the Ohio Constitution, which, in part, provides:

"Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds."

Under this constitutional grant of power the Legislature has enacted a School Code, and has amended said Code from time to time as conditions warrant. Do the provisions of §4831-11 GC transgress the constitutional grant of power? We do not think so.

In the case of State, ex rel, v Schneider, 103 Oh St 492, the court had under consideration the constitutionality of former §4736 GC, and on page 497 the court say:

"Section 3, Article VI of the Ohio Constitution, confers upon the legislature full power and authority over the organization, administration and control of the public school system

of the state. Whether notice should or should not be given, either prior or subsequent to the action of the county board of education, is a question entirely of legislative policy, and the argument which counsel for respondents make relative thereto might well be directed to the legislative rather than to the judicial branch of the government."

In **Kneale v Jennings, 111 Oh St 637,** in discussing the question of constitutionality of §4736 GC, the court, on page 640, held:

"The power to arrange school districts necessarily must be given to some agency, and the General Assembly under **Section 3, Article VI,** of the **Constitution,** has delegated that duty to the county board of education."

On page 645 the court stated:

"The arranging of districts is an administrative matter."

In **Matz v Curtis Cartage Company, 132 Oh St 272,** the court on page 282 say:

"There are a number of cases in this jurisdiction that discuss delegation of power and they emphasize the principle that, if the authority conferred is administrative, constitutional limitations are not transgressed."

In Belden v Union Central Life Insurance Company, supra, on page 347 the court held:

"It seems clear, both upon reason and authority, that while the General Assembly may not delegate the exercise of its discretion as to what the law shall be, it may confer discretion in the administration of the law."

In **Ex Parte Company, 106 Oh St 50,** the court, on page 57, say:

"It is claimed further in behalf of the petitioners that the leglislature is without power to delegate its lawmaking authority. The distinction between power granted to legislate and power granted to administer marks the difference between the contention urged and the true question herein to be considered."

These cases, and others cited in the opinions, hold that while the Legislature cannot delegate its power to make a law, it can make a law delegating power to a person or board to determine some fact or state of things upon which the execution and administration of the law depends.

"The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." Lewis' Sutherland on Statutory Construction (2d Ed.), Vol. 1, page 148, Sec. 88.

We are of the opinion that the Superintendent, in approving or modifying a plan of organization under the provisions of §4831-11 GC, performs an administrative function. The powers conferred, being administrative, this section is constitutional.

It is further contended that the provisions of §4831-11 GC, which confers on the Superintendent authority to approve a plan of organization, which may be the "original plan as submitted by the County Board of Education, or any modification thereof," does not confer on the Superintendent authority to initiate or set up a new and entirely different plan, after a hearing has been held, as provided in §4831-9 and §4831-10 GC. The point is made that the Superintendent, in announcing his approval of a plan of organization, entirely different from either the original plan submitted by the County Board or the plan as modified by him under date of August 17, 1944, exceeded the authority conferred on him under §4831-11 GC. In determining this matter we are not concerned with the plan approved by the Superintendent under date of August 17, 1944. This plan is not an issue in this case. We are only required to test the validity of the final plan approved by the Superintendent under date of October 6, 1944.

Did the Superintendent exceed his statutory authority? The answer is found in the provisions of the Act itself. Sec. 4831-2 GC provides for a publication of the plan adopted by the County Board. Section 4831-4 GC provides that on or before the first Monday in May, in the year 1944, and each biennium thereafter, the County Board shall file with the Superintendent the plan of organization adopted by the County Board. Sec. 4831-6 GC provides that the plan may be approved

or modified by the Superintendent. If he modifies the plan he shall state in writing to the County Board his reasons for such modification. Likewise, under the provisions of §4831-7 GC the County Board is required to notify the Local Boards of such modification, including the reasons for such change, as set forth by the Superintendent. Sec. 4831-8 GC provides for the filing of objections to modifications of the plan and request for a hearing. In the case at bar objections were filed by two Local Boards, and a hearing was requested. It is significant that this section provides that if no protest is filed "such plan shall be final." Sec. 4831-9 GC provides that if a hearing is required "on the plan of organization of Local School Districts, as modified by the Superintendent of Public Instruction," the Superintendent shall set a time and place and give notice to all Local Boards of such hearing. Sec. 4831-10 GC provides the course of procedure to be followed at the hearing. The County Board, each Local Board and any elector of the affected districts "shall be given time to state their views on the plan of organization as modified by the Superintendent of Public Instruction." Finally, §4831-11 GC provides what action shall be taken by the Superintendent after such hearing. This section requires the Superintendent within 60 days after the hearing to "approve a plan of organization of the Local School Districts," and also expressly provides that "such approved plan may be the original plan, as submitted by the County Board of Education, or any modification thereof, and such plan shall be final," etc. All these sections (§4831 to 4831-14 GC, inclusive) are in pari materia and must be construed together. We gather from these sections a legislative intent that no plan of organization shall be adopted, approved or modified unless and until publication has been made, or, in case of protest, a hearing has been held, and an opportunity given to the County Board, Local Boards or electors of affected districts to be heard on the objections. It was the legislative intent, as we view it, that no plan of organization shall be approved and made final if objections are filed unless the Boards and electors of the affected districts have been heard thereon. The provisions of §4831-9 GC contemplate that the hearing shall be on the question as to whether the original plan submitted by the County Board, or the plan as modified by the Superintendent, shall be the final plan to be approved. Also §4831-11 GC contemplates that the Superintendent may not approve a plan of organization unless a hearing has first been held on the plan which he approves. Support for this

construction is found in the second paragraph of this section, which, in part, provides:

"Upon the approval of a plan of organization of local school districts under the jurisdiction of a county board of education, **upon which a hearing has been held,** the superintendent of public instruction shall notify the county board of education that he has approved a plan of organization," et. (Emphasis ours.)

In the instant case, after the hearing, the Superintendent announced his approval of a different plan than that on which a hearing had been held. The effect of the action of the Superintendent was to put into operation a plan on which a hearing had not been held, and a plan which had never been presented to persons or parties affected. The notice given to the Boards of the Local School Districts affected gave no intimation that any plan other than the one adopted by the County Board, or as modified by the Superintendent, would be considered at the hearing. After the hearing the Superintendent, under the provisions of §4831-11 GC is given authority to do one of two things. He could approve either the original plan as submitted by the County Board, or such plan as modified by him. He did neither; after the hearing he initiated and approved a new plan. To permit this to be done would deprive the electors of a Local School District affected all statutory benefits of a protest and hearing on the plan vouchsafed to them by the School Code. In taking this action the Superintendent exceeded the authority conferred on him under §4831-11 GC.

Furthermore, if it be conceded that the Superintendent is given discretionary power under the provisions of §4831-11 GC, to approve a modified plan, which differs from the two plans presented at the hearing, it is contended that the action taken amounted to a gross abuse of discretion. On this issue the trial court found that the Superintendent was not guilty of an abuse of discretion. The rule which is controlling in such matters is stated in **Vol. 32 O. Jur. page 930, Sec. 73,** as follows:

"The rule is firmly established that the courts will not interfere with executive officers or boards in the performance of duties which are discretionary in their nature or involve the exercise of judgment, unless the action is such as to amount

to fraud, bad faith, or a gross abuse of the judicial discretion conferred upon such officer or board." (Numerous authorities are cited.)

Again it is stated in **Vol. 21 O. Jur. Sec. 202, page 1279,** that:

"The courts will not presume wrong, illegality, collusion, or fraud upon the part of public officials, and if an act or decision, a result of an exercise of discretion, be attacked on these grounds, the facts showing the wrong complained of must be specially set out."

In Kneale v Jennings, supra, it was contended that the Board of Education proceeded arbitrarily, whimsically ,and unreasonably in the merging of two school districts. On the question as to whether the school board acted arbitrarily, the court held that the presumption was otherwise. The court quotes with approval the case of **State ex rel Maxwell v Schneider, 103 Oh St 492,** at page **498,** as follows:

"The action of a public officer, or of a board, within the limits of the jurisdiction conferred by law, is not only presumed to be valid but it is also presumed to be in good faith and in the exercise of sound judgment. Before a court will take cognizance of a claim that the action of such officer or board is unlawful, arbitrary, unreasonable, or of such character as to constitute an abuse of discretion, facts must be set forth which would warrant such conclusion."

See also **State ex rel Wilms v Blake, 144 Oh St 619.**

Did the act of the Superintendent constitute a gross abuse of discretion? It is contended that, conceding the Superintendent is given power to "modify" the plans proposed and presented at the hearing, the plan which he finally approved went far beyond mere modification. The plan finally approved by the Superintendent was the elimination of the East Salem Rural School District by transferring a part to Jackson Center Village School District, and the remaining portion thereof to the Perry School District. Obviously the words "any modification thereof," as used in §4831-11 GC refers to a modification of the original plan submitted by the County Board. The original plan submitted by the County Board provided for transferring the entire East Salem Rural School District to Sidney City School District. Can it be claimed that the plan, as finally approved, was a modification of the original plan submitted by the County Board? We do not think so. In Words and

Phrases, Vol. 27, page 425, the word "modify" is defined to mean "to change," "to qualify," "to vary," "to moderate," "to alter," "to limit or restrict as," "to modify the details of a plan." In Webster's Unabridged Dictionary (1941 edition) the word "modify" is defined to mean "to limit," "to reduce the extent or degree," "to moderate," "qualify," "to change somewhat the form or qualities of," "to alter somewhat." Certainly, to "modify" means to accept in part and reject in part. This the Superintendent did not do. The plan finally approved by the Superintendent was a completely new and different plan and went beyond anything within the concept of the term "modification." The power to modify does not confer the power to destroy. Linn v Linn, 8 So. 2d. 187, 242 Ala 688; Van Deusen v Ruth, 125 S. W. 2d. 1, 343 Mo. 1096. The Superintendent has the authority to vary, limit, or restrict the application of the original plan submitted by the County Board, but he cannot substitute a completely new plan. Such act constituted a gross abuse of discretion.

It is urged that the plan submitted by the County Board was a county-wide plan, which embraced seventeen Local School Districts, that only three of the Local School Districts were affected by the modified plan finally approved by the Superintendent. The point is made that since the action of the Superintendent only affected three out of seventeen Local School Districts in the county, a change in the school system of three Local Districts should be regarded as a slight modification of the entire county plan. Objections were not filed and no controversy arose as to fourteen Local School Districts in the county plan. The issue made did affect most vitally three of the Local School Districts. We are of the opinion that the validity of the act of the Superintendent must be tested by the manner in which the plan, finally approved by him, affected the area composing the three Local School Districts in controversy.

We are of the opinion that prejudicial error was committed by the trial court in holding that the Superintendent did not exceed his statutory power, and further in holding that the Superintendent was not guilty of gross abuse of discretion. The judgment of the trial court will be reversed. A mandate may issue to the trial court with instructions to grant to the plaintiffs-appellants the injunctive relief prayed for. An Entry may be drawn accordingly.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.