[No. 34622. *En Banc.* September 15, 1958.]

SHORELINE SCHOOL DISTRICT NO. 412, *Respondent,* v. THE TAXPAYERS OF SHORELINE SCHOOL DISTRICT NO. 412, *Defendants,* DR. H. STANLEY BENNETT, *as Representative of The Taxpayers of Shoreline School District No. 412, Appellant.*[1]

[1]Reported in 329 P. (2d) 829.

*MacDonald, Hoague & Bayless*, for appellant.

*Weter, Roberts & Shefelman*, for respondent.

*The Attorney General, Philip R. Meade* and *Elvin J. Vandeberg, Assistants, amicus curiae.*

FOSTER, J.—The respondent, Shoreline school district No. 412, plaintiff below, sued under the declaratory judgment act, relating to bond issues (RCW chapter 7.25), seeking a determination that its bonds were a valid indebtedness. Pursuant to RCW 7.25.020 (Laws of 1939, chapter 153, § 2, p. 452), the court appointed a resident taxpayer to represent the other taxpayers of the district. The taxpayer so appointed appeals from the judgment determining that the bonds in question were a valid obligation of the respondent school district.

The facts were stipulated and carried forward by the court's findings of fact so that only two issues of law are presented by this appeal.

On March 1, 1953, approximately one half of the area of the respondent school district was regularly transferred to the Seattle school district as a result of the extension of the Seattle city limits. Consequently, approximately one half of the bonded indebtedness of the Shoreline district was transferred to the Seattle school district, which assumed

and agreed to pay the same to the respondent school district as such bonds matured. Prior to the division, respondent school district's indebtedness was $4,858,000, and the net indebtedness was $4,279,019.22. The Seattle school district agreed to pay $1,322,519.76, which left a net indebtedness of the Shoreline district of $2,956,499.46.

The bond issue in question aggregates $50,000, which when added to the existing indebtedness, would increase the outstanding debt of the respondent school district to $3,006,499.46, which is less than ten per cent of the existing valuation of the Shoreline district of $31,906,747.

The question sought to be determined in the declaratory judgment action and the issue now before this court is the legality of Shoreline's proposed new bond issue of $50,000.

Two questions are presented upon the appeal: First, it is argued that the statute (Laws of 1947, chapter 266, § 13, p. 1111) under which the consolidation was effected and the bond assumption made is void because it is an unconstitutional attempt to delegate legislative powers; and, second, that the Shoreline school district still remains obligated in the amount of its original bonded indebtedness and that the assumption of approximately one half of that indebtedness by the Seattle school district, and its promise to pay therefor, is not an asset which may be deducted in determining the indebtedness of the Shoreline school district, and, therefore, its constitutional debt limit is exceeded, rendering the proposed bond issue void. Both questions have been foreclosed adversely to the appellant's contention by prior decisions of this court.

The first issue is whether the 1947 school district consolidation act is constitutional. Laws of 1947, chapter 266, § 13, p. 1111, which empowers consolidation of school districts, so far as material is set out in the margin.[2] The statutory standards to be applied in making such reorganizations are:

---

[2]"The powers and duties of the County Committee shall be: . . .

"(2) (a) To make among the old school districts and the new district or districts, if any, involved in or affected by a proposed change in the organization and extent of school districts an equitable adjustment of the property and other assets and of the liabilities, including bonded

"(4) To give due consideration in the preparation of the aforesaid proposals (a) to the equalization of the educational opportunities of pupils, (b) to the educational needs of local communities, (c) to economies in the administration and operation of schools and in transportation costs, (d) to the convenience and welfare of pupils, (e) to a reduction in disparities in per-pupil valuation among school districts, (f) to equalization of the burden of financing the cost of high school facilities through an extension of the boundaries of high school districts to include within each such district all of the territory served by the high school located therein, (g) to the future use of existing satisfactory school buildings, sites, and playfields, and (h) to any other matters which in its judgment are of importance." Laws of 1947, chapter 266, § 13 (4).

The contention is that the power granted for the consolidation of school districts by Laws of 1947, chapter 266, is an unlawful delegation of legislative power. The appellant assumes, without more, that this is so, but it has been held in many decided cases that the formation or consolidation of school districts is an administrative and not a legislative function. *Smith v. Ray*, 83 Ohio App. 61, 72 N. E. (2d) 921, affirmed 149 Ohio St. 394, 79 N. E. (2d) 116; *Gardner v. Ginther*, 232 App. Div. 296, 250 N. Y. Supp. 176, affirmed by the court of appeals 257 N. Y. 578, 178 N. E. 802; *Bedingfield v. Parkerson*, 212 Ga. 654, 94 S. E. (2d) 714.

The supreme court of Wisconsin in *School Dist. No. 3 of*

---

indebtedness, of all districts involved or affected; and (b) to make among all of the school districts involved in or affected by any change heretofore or hereafter effected, an equitable adjustment of the bonded indebtedness outstanding against any of the aforesaid districts whenever in its judgment such adjustment is advisable; and (c) to submit to the State Board the proposed terms of adjustment and a statement of the reasons therefor in each of the aforesaid cases. In making the adjustments herein provided for, the County Committee shall consider the number of children of school age resident in and the assessed valuation of the property located in each district and in each part of a district involved or affected; the purpose for which the bonded indebtedness of any district was incurred; the value, location, and disposition of all improvements located in the districts involved or affected; and any other matters which, in the judgment of the Committee are of importance or essential to the making of the aforesaid equitable adjustment."

*Town of Adams v. Callahan*, 237 Wis. 560, 297 N. W. 407, 135 A. L. R. 1081, said:

" . . . . the formation of school districts and the power to exercise discretion in determining whether such districts shall be altered by consolidation or otherwise is not such an exclusive legislative function as may not be delegated to the state superintendent, as well as to town boards; and that this power may be delegated without any standard whatsoever to guide in the exercise of the power delegated. . . . "

That view was reiterated recently by the same court in *School Dist. No. 4 of Town of LaFollette v. County School Committee of Burnett County*, 262 Wis. 484, 55 N. W. (2d) 874.

This court in *State ex rel. Chicago, Milwaukee & St. Paul R. Co. v. Public Service Comm.*, 94 Wash. 274, 162 Pac. 523, said:

"It is therefore clear that, before this court can hold that any attempt of the legislature to confer on the commission a given power is void as an unconstitutional delegation of either legislative or judicial power, it must clearly appear that the power in question is purely legislative or judicial, and not merely incidental to some of the administrative powers for the exercise of which the commission was created."[3]

We need not stop to resolve the issue as to whether the the power to consolidate school districts is legislative or administrative because the act itself contains adequate stand-

---

[3]"It is a well-settled rule, supported with practical unanimity by the authorities, that the general doctrine prohibiting the delegation of legislative authority has no application to the vesting in political subdivisions of power of government matters which are local in scope. For a great variety of purposes and governmental functions the legislature may delegate a part of its power over local subjects to public bodies. 11 Am. Jur., Constitutional Law, p. 934, sec. 223. While the legislature cannot delegate to towns its power to enact laws of a general nature, it may delegate to them the power to make and enforce laws relating to matters of local concern. 52 Am. Jur., Towns and Townships, p. 485, sec. 24. The legislature may impose upon political subdivisions created for the purpose of local government the authority as agents of the state to carry out and perform a state function or purpose. 16 C. J. S., Constitutional Law, p. 399, sec. 140." *Milwaukee v. Sewerage Comm.*, 268 Wis. 342, 67 N. W. (2d) 624.

ards, and we will assume, for present purposes, as the New York court of appeals did in *In re Board of Education of Union Free School Dist. No. 1 of Bethlehem, Coeymans & New Scotland v. Wilson*, 303 N. Y. 107, 100 N. E. (2d) 159, that the power is legislative and is accompanied by adequate standards. The New York court of appeals said in that case:

"... And if indeed there were any delegation of legislative as distinguished from administrative power, it has been accompanied by standards for its exercise. ..."

*Wheeler School Dist. No. 152 v. Hawley*, 18 Wn. (2d) 37, 137 P. (2d) 1010, decided that the standards were adequate.

The standards prescribed bear a remarkable similarity to those of Nebraska[4] which were held to be adequate in *Nickel v. School Board of Axtell*, 157 Neb. 813, 61 N. W. (2d) 566.

Similar standards in the acts of other states have been sustained as against the same challenge in the cases collected in the margin.[5]

■ The standards may be couched in the most general

----

[4]"... In preparation of a plan for reorganization of school districts, the county committee shall give due consideration (1) to the educational needs of local communities, (2) to economies in transportation and administration costs, (3) to the future use of existing satisfactory school buildings, sites, and play fields, (4) to the convenience and welfare of pupils, (5) to a reduction in disparities in per-pupil valuation among school districts, (6) to the equalization of the educational opportunity of pupils, and (7) to any other matters which, in its judgment, are of importance. The county committee, in preparation of a plan for reorganization, shall take account of any advice or suggestions offered by the state committee.'"

[5]*Hazlet v. Gaunt, supra; State ex rel. Gray v. Board of Education of City of Chetopa*, 173 Kan. 780, 252 P. (2d) 859; *State ex rel. Berthot v. Gallatin County High School Dist.*, 102 Mont. 356, 58 P. (2d) 264; *In re Board of Education of Union Free School Dist. No. 1 of Towns of Bethlehem, Coeymans & New Scotland v. Wilson, supra; Anderson v. Peterson*, 78 N. D. 949, 54 N. W. (2d) 542; *Smith v. Ray, supra; School Dist. No. 25 of Woods County v. Hodge*, 199 Okla. 81, 183 P. (2d) 575; *School Dist. No. 4 of Town of LaFollette v. County School Committee of Burnett County, supra; In re Weaverland Independent School Dist.*, 378 Pa. 449, 106 A. (2d) 812.

terms. 16 C. J. S. 570, 579, § 138, note 23; 11 Am. Jur. 955, 957, § 240; *Hazlet v. Gaunt*, 126 Colo. 385, 250 P. (2d) 188; *State ex rel. Chicago, Milwaukee & St. Paul R. Co. v. Public Service Comm., supra.*

■ We find the assignment that there is an unconstitutional delegation of legislative power to be without merit.

The other issue is that the proposed bond issue will exceed Shoreline's constitutional debt limit. The argument is upon two grounds: First, that the Seattle school district's assumption of the bonded indebtedness is invalid because the act under which the consolidation was effected is unconstitutional; and second, that although the debt was assumed by the Seattle school district, nevertheless, it remains a debt of the Shoreline school district which, with the proposed new bond issue, exceeds the constitutional limit of ten per cent.[6] :

The first ground has been disposed of by what has been said.

■ The second, likewise, is without merit and is foreclosed by our decision in *Raynor v. King County*, 2 Wn. (2d) 199, 97 P. (2d) 696. No question arises as to the financial integrity of the Seattle school district. Its obligation to which it has pledged its full faith and credit may be treated as the equivalent of cash, and, based upon prior decisions, we held in *Raynor v. King County, supra*, that cash or its equivalent should be deducted in determining the net indebtedness of a municipal corporation in ascertaining the constitutional debt limit. That decision controls here.

Appellant will recover costs and attorneys' fees in this court according to the terms of a written stipulation on file.

The judgment is affirmed.

ALL CONCUR.

---

[6] ". . . nor in cases requiring such assent shall the total indebtedness at any time exceed five percentum on the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness, except that in incorporated cities the assessment shall be taken from the last assessment for city purposes: *Provided,* That . . . (b) any school district with such assent, may be allowed to become indebted to a larger amount but not exceeding five percentum additional for capital outlays." Amendment 27, Washington State Constitution.