79 P.3d 24 (2003)
CITY OF SEQUIM, a Noncharter Code City and a Municipal Corporation of the State of Washington, by and through its City Council, Appellant,
v.
Paul MALKASIAN, Circulator, Sponsor and Presenter of an Initiative and a Referendum Petition to the Sequim City Council, Respondent.
No. 22922-6-II.
Court of Appeals of Washington, Division 2.
November 12, 2003.
As Amended December 30, 2003.
*25 Craig Andrew Ritchie, Port Angeles, WA, for Respondent.
Peter J. Eglick, Helsell Fetterman LLP, Seattle, WA, for Appellant.
MORGAN, J.
After an election in which a city's voters approve an initiative, thus converting the initiative into an ordinance, does the city have standing to seek a judgment declaring that the ordinance violates state law? Assuming that the city has standing to sue, may it name the initiative's sponsor, in his or her individual capacity, as the sole defendant? We answer yes to the first question but no to the second. Accordingly, we agree with the trial court that this action is not justiciable and should be dismissed.
In October 1996, Paul Malkasian proposed and filed an initiative which, if adopted, would require the City of Sequim to obtain a vote of the people before issuing revenue bonds. Titled the "Ratepayer's Responsibility Act" (hereafter RRA), the initiative provided in part:
3. Bond obligations entered into after the date of enactment of this Ordinance, which are intended for application city wide (as opposed to local improvement districts or similar limited assessments) and depend on rates or taxes on a city wide basis, shall be issued only if they are approved by a majority vote of the qualified electors of Sequim at a regular or special election. The necessity for voter approval is inclusive of bonds which are supported by revenues derived from rates for utilities and *26 such city services as are required to be paid for by Sequim residents.[[1]]
The City refused to put the RRA on the ballot and brought this action for declaratory judgment. It named as plaintiff the "[City of Sequim], a Noncharter Code City and a Municipal Corporation of the State of Washington, by and through its City Council[.]"[2] It named as defendant "[Paul Malkasian], Circulator, Sponsor and presenter of an Initiative...."[3] It prayed for a judgment declaring that the RRA was invalid.
The trial court denied pre-election relief and ordered the City to put the RRA on the ballot. The City complied with that order, and in November 1998 the RRA was approved by a majority of the City's voters. A short time later, the RRA took effect as one of the City's ordinances.
After the election, the City continued to prosecute this declaratory judgment action, primarily on the basis that the RRA violates state law.[4] The City did not ask the court to find that Malkasian was representative of the City's voters. Nor did it offer to fund a defense of the action.
In June 2002, after some intervening events not pertinent here, Malkasian moved to dismiss the City's action. He claimed that the City lacked standing to attack one of its own laws. He also claimed that the City could not sue him in his individual capacity because that would put him in "the anomalous position of unappointed sole defender (at his private expense) of a City ordinance...."[5] At the ensuing hearing, he orally told the trial court:
[T]here are ways that the City could proceed here if it was trying to do something other than essentially litigate against a party who does not have the same capability, the same financial resources, and who cannot really speak for the electorate or for the tax payers.
What the City could have done, and could still do, is either bring a class action[,]... and have a representative of class appointed who will retain counsel, and have payment made to that counsel[;] or the City could wait, and if and when the City has some bond issue that it thinks is [a]ffected by the initiative, the City could at that time bring a declaratory judgment action, have counsel appointed for the class of rate payers [a]ffected by the bond issue, or the taxpayers [a]ffected by the bond issue, and then arrange for payment ... [[6]]
In July 2002, the trial court dismissed the action. It reasoned that the case was not justiciable because the City had not joined proper parties defendant. It did not reach whether the RRA violates state law.
The City now appeals. It asks us to declare that the RRA violates state law, even though the trial court never reached that issue. Malkasian responds that the City cannot attack one of its own ordinances, and thus that it lacks standing to sue. Malkasian further responds that he is not a proper defendant, for he lacks the resources to represent the interests of the City's electorate. For both reasons, he says, the action is not justiciable. Finding his responses dispositive, we do not reach the merits.

I.
Malkasian argues that the City lacks standing to sue under Washington's Uniform Declaratory Judgments Act (hereafter the DJA). The DJA was originally passed in 1935[7] and is presently codified as Chapter 7.24 RCW. Its purpose "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," and it is "to be liberally *27 construed and administered."[8] It provides in part that a "person ... whose rights... or other legal relations are affected by a... municipal ordinance ... may have determined any question of construction or validity arising under the ... ordinance ... and obtain a declaration of rights, status or other legal relations thereunder."[9] It further provides that a "person" is, among others, a "municipal ... corporation of any character whatsoever."[10] Thus, a city has standing to bring a declaratory judgment action if "[its] rights ... or other legal relations are affected by a ... municipal ordinance"[11] in a "direct and substantial" way, as opposed to a "potential, theoretical, abstract or academic" way.[12]
In this case, the parties dispute whether the RRA violates state law. If the City is correct, its officials must follow state law. If Malkasian is correct, the City's officials must follow the RRA. Until the dispute is resolved, the City and its officials are necessarily "uncertain[ ] and insecur[e]"[13] about what law to follow when issuing revenue bonds. Similarly, bond underwriters and investors are "uncertain[ ] and insecur[e]"[14] about what law applies to the issuance of revenue bonds. Given the peculiarly sensitive nature of issuing and selling bonds, we hold that the mere existence of the RRA directly and substantially affects the City's bonding relationships; that the mere existence of the RRA creates the kind of "uncertainty and insecurity" that the DJA was designed to forestall;[15] and that the City has standing here.
Malkasian argues that even if a city has standing to claim that an ordinance is valid,[16] it lacks standing to claim that an ordinance is invalid. In our view, however, it makes no difference whether a city is attempting to validate or invalidate an ordinance created by initiative. Because a declaratory judgment "may be either affirmative or negative in form and effect," the ordinance need only affect the City's rights directly and substantially,[17] and that criterion is met here for reasons already set forth.[18]

II.
Malkasian argues that the City cannot make him the sole defendant. He reasons that he has not been appointed to represent the City's electorate and that he lacks the resources to do that vigorously and effectively. He concludes that the action is not justiciable in its present form.
In 1937, the Washington Supreme Court said in Acme Finance Company v. Huse:[19]
Where the plaintiff has no legal interest, no judgment can be rendered; and also where the defendant has no legal interest; and no judgment may be rendered where *28 the interest of the parties is not conflicting.[[20]]
A year later, the court both elaborated and reiterated:
[T]his court is not authorized to render advisory opinions or pronouncements upon abstract or speculative questions under the declaratory judgment act. The action still must be adversary in character between real parties and upon real issues, that is, between a plaintiff and defendant having opposing interests, and the interests must be direct and substantial and involve an actual as distinguished from a possible or potential dispute, to meet the requirements of justiciability.[[21]]
The term "substantial interest" is not susceptible of a precise definition. It is a matter for judicial determination in each particular case.
In Acme Finance Co. v. Huse,[[22]]... we said:
Where the plaintiff has no legal interest, no judgment can be rendered; and also where the defendant has no legal interest; and no judgment may be rendered where the interest of the parties is not conflicting.
These cases teach that both the plaintiff and the defendant must have direct and substantial legal interests, and that the plaintiff must name a proper party defendant in order for a declaratory judgment action to be justiciable.[23] The plaintiff may not set up a "straw man" defendant whom it can easily knock over.[24] The purpose is to insure "opposing parties that are fairly motivated to diligently and effectively present the merits of all sides of the issues presented, thereby facilitating the court's efforts to reach the correct results."[25]
The question here is whom a city must name when it seeks to invalidate an ordinance resulting from an initiative. May it select and sue any citizen (e.g., the initiative's sponsor) in his or her individual capacity? Or, must it select and sue a citizen whom the trial court finds representative of, and willing and able to defend, a class comprised of the city's electorate? The City argues for the former alternative, while Malkasian argues for the latter.
We agree with Malkasian. Once an initiative has become an ordinance, all citizens have an equal interest in its validity, and its sponsor no longer has a greater interest than any other citizen. Because no citizen has a more direct or substantial right than any other, no citizen acting in his individual capacity has a right that is direct or substantial enough to insure that he or she will vigorously and effectively defend. Accordingly, we hold that when a city seeks to invalidate an ordinance, it may not single out and sue any citizeneven the initiative's sponsorin his *29 or her individual capacity. Rather, the city must sue a citizen or citizens whom the trial court finds to be representative of the electorate and willing and able to defend the ordinance.
RCW 7.25.010 and RCW 7.25.020 tend to support this result. RCW 7.25.010 states:
Whenever the legislative or governing body of the state or any county, city, school district, other municipal corporation, taxing district, or any agency, instrumentality, or public corporation thereof shall desire to issue bonds of any kind and shall have passed an ordinance or resolution authorizing the same, the validity of such proposed bond issue may be tested and determined in the manner provided in this chapter.
RCW 7.25.020 states:
A complaint shall be prepared and filed in the superior court by such government entity setting forth such ordinance or resolution and that it is the purpose of the plaintiff to issue and sell bonds as stated therein and that it is desired that the right of the plaintiff to so issue such bonds and sell the same shall be tested and determined in said action. In said action all interested parties shall be deemed to be defendants. The title of the action shall be "In re (name of bond issue)." Upon the filing of the complaint the court shall, upon the application of the plaintiff, enter an order naming one or more interested parties upon whom service in said action shall be made as the representative of all interested parties, except such as may intervene as herein provided, and in such case the court shall fix and allow a reasonable attorney's fee in said action to the attorney who shall represent the representative interested parties as aforesaid, and such fee and all taxable costs incurred by such representative interested parties shall be taxed as costs against the plaintiff ... [[26]]
Neither statute directly applies here, for the City has not yet passed an ordinance or resolution authorizing the issuance of particular bonds. Together however, these statutes embody a legislatively-declared public policy that when a city seeks a judicial declaration concerning bonds, it should be required to identify and have the court appoint defendants who are representative, willing and able. That same public policy applies here.
To rule contrarily might have several undesirable consequences. First, a city might bring an action under RCW 7.24, rather than an action under RCW 7.25, just to avoid the appointment and funding requirements of RCW 7.25. This would obviate the legislatively declared policies in RCW 7.25 and should not be permitted. Second, a city might validate or invalidate an ordinance by selecting a citizen who was unwilling or unable to defend, essentially as a "straw man" defendant whom the city could easily knock over. Third, a city might try to deter the use of initiatives by requiring anyone who sponsors an initiative to defend it at his or her own expense, even after it has been adopted by a vote of the city's people. These potential consequences should be forestalled or at least minimized.
We have not considered or addressed whether a city may or may not sue, in his or her individual capacity, the sponsor of an initiative that has not yet been adopted by the people. Assuming without holding that a city may do that, it must substitute representative defendants after the initiative has been adopted by the people. At that point, it is the people, not a single individual, who have the direct and substantial interest needed to provide justiciability.
*30 Malkasian claims reasonable attorney fees. If he had secured his appointment as a representative of the city's taxpayers, thus enabling the action to proceed on its merits, he might well be entitled to such fees by analogy to RCW 7.25.[27] Rather than doing that, however, he elected to remain in his individual capacity and secure a dismissal for lack of justiciability. Under those circumstances, we perceive no statutory, contractual, or recognized equitable basis for awarding attorney fees,[28] and thus we deny fees at this time.[29]
Affirmed.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] Clerk's Papers (CP) at 305.
[2] CP at 296.
[3] CP at 296.
[4] See, e.g., King County v. Taxpayers of King County, 133 Wash.2d 584, 608-12, 949 P.2d 1260 (1997), cert. denied, 522 U.S. 1076, 118 S.Ct. 854, 139 L.Ed.2d 754 (1998).
[5] Supp. CP (Dec. 12, 2002) at 18 (underlining in original).
[6] Report of Proceedings (RP) at 5.
[7] See Laws of 1935, ch. 113, § 1.
[8] RCW 7.24.120.
[9] RCW 7.24.020; see also 22A AM.JUR.2D Declaratory Judgments § 58 (2003).
[10] RCW 7.24.130.
[11] RCW 7.24.020; see also 22A AM.JUR.2D Declaratory Judgments § 58 (2003).
[12] To-Ro Trade Shows v. Collins, 144 Wash.2d 403, 411, 27 P.3d 1149 (2001) (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973)), cert denied, 535 U.S. 931, 122 S.Ct. 1304, 152 L.Ed.2d 215 (2002).
[13] RCW 7.24.120.
[14] RCW 7.24.120.
[15] RCW 7.24.120.
[16] RCW 7.24.020; see City of Tacoma v. Taxpayers of City of Tacoma, 108 Wash.2d 679, 743 P.2d 793 (1987) (City permitted to sue for declaration that conservation ordinance was valid); City of Issaquah v. Teleprompter Corp., 93 Wash.2d 567, 611 P.2d 741 (1980) (City permitted to sue for declaration that cable TV ordinance was valid); City of Nevada v. Welty, 356 Mo. 734, 203 S.W.2d 459, 460 (1947) ("It is clear that there was a controversy over the validity of the ordinance and that the City sought a declaration of its rights thereunder. This is expressly authorized by Section 2 of the Declaratory Judgment Act.").
[17] RCW 7.24.010.
[18] Nothing in this paragraph indicates that a City has standing to attack an ordinance adopted by its legislative body, as opposed to an ordinance adopted by initiative. We have not considered that question, which seems unlikely to arise.
[19] 192 Wash. 96, 73 P.2d 341 (1937).
[20] 192 Wash. at 104, 73 P.2d 341 (citations omitted) (emphasis added).
[21] Wash. Beauty Coll., Inc. v. Huse, 195 Wash. 160, 164-65, 80 P.2d 403 (1938) (citations omitted) (emphasis added); see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (citations omitted), which states:

A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.
[22] 192 Wash. at 104, 73 P.2d 341.
[23] See 59 AM.JUR.2D Parties § 51 (2002) (it "is incumbent upon a plaintiff, when instituting a judicial proceeding, to name the proper party defendant to the cause of action") (citing Board of Ed. of Miami Trace Local School Dist. v. Marting, 185 N.E.2d 583, 589 (Ohio Ct.Com.Pl.1961)).
[24] See U.S. v. Johnson, 319 U.S. 302, 305, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943); cf. Lord v. Veazie, 49 U.S. (8 How.) 251, 12 L.Ed. 1067 (1850) (parties not adverse if each has same interest in outcome).
[25] 32A AM.JUR.2D Federal Courts § 683 (1995) (citing Fin. Guar. Ins. Co. v. City of Fayetteville, 943 F.2d 925, 929 (8th Cir.1991)); see also GTE Sylvania, Inc. v. Consumers Union of U.S., Inc., 445 U.S. 375, 382-83, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980) ("The clash of adverse parties "`sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.'"") (citations omitted).
[26] In 1996, when the Complaint in this case was filed, the second sentence of this statute read, "In said action taxpayers of such taxing district shall be deemed to be defendants and shall be named in the title of said action as defendants with the words `The Taxpayers of ........ (naming the taxing district), Defendants.'" Former RCW 7.25.020. The Legislature amended the section in 1999. See Laws of 1999, ch. 284, § 3. See also King County, 133 Wash.2d 584, 949 P.2d 1260 (County sued its taxpayers for declaratory judgment validating bonds necessary to finance a baseball stadium); Shoreline School Dist. No. 412 v. Taxpayers of Shoreline School Dist. No. 412, 52 Wash.2d 849, 850, 329 P.2d 829 (1958) ("Pursuant to RCW 7.25.020 ... the court appointed a resident taxpayer to represent the other taxpayers of the district.").
[27] Otherwise, as already noted, a city could avoid the funding requirements of RCW 7.25 simply by using RCW 7.24.
[28] Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 70, 847 P.2d 440 (1993); Mailloux v. State Farm Mut. Auto. Ins. Co., 76 Wash.App. 507, 517, 887 P.2d 449 (1995) (quoting Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994)).
[29] We do not decide whether fees, arguably including some already incurred, will be awardable if the action is later refiled in justiciable fashion.