In the Matter of the BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 1 OF THE TOWNS OF BETHLEHEM, COEYMANS and NEW SCOTLAND, Petitioner, against FRANCIS T. SPAULDING, as Commissioner of Education of the State of New York, Respondent.

Supreme Court, Special Term, Albany County, June 28, 1949.

*Andrew Wright Lent* for petitioner.

*Charles A. Brind, Jr.,* for respondent.

*John A. Manning* for Union Free School District No. 1, Town of Coeymans, and another, *amicus curiæ*.

TAYLOR, J. This is the return of an order to show cause to review, modify, vacate or set aside, pursuant to article 78 of the Civil Practice Act, an order of the Commissioner of Education which laid out Central School District No. 1 of the Towns of Coeymans and New Scotland, Albany County, and New Baltimore, Greene County. The petitioner is the Board of Education of Union Free School District No. 1 of the Towns of Bethlehem, Coeymans and New Scotland. The contention of the petitioner is that the Commissioner of Education in laying out such central school district exceeded the powers conferred upon him by statute and in so doing was capricious and arbitrary.

It appears that on March 10, 1947, by the joint action of the voters of nine former school districts, of which North Coeymans, Common School District No. 2 was one, the petitioner's said district was created and that prior thereto and on February 26, 1947, one Bouck, who was the district superintendent of the

supervisory district in which that common school district was located, signed an order, pursuant to section 1505 of the Education Law, which dissolved such school district and made it a part of Union Free School District No. 1 of the Town of Coeymans, which order provided that it should become effective on July 1, 1947. An objection in the manner provided by statute (Education Law, § 1505) was presented to the County Judge of Albany County by said North Coeymans Common School District No. 2 who thereupon appointed a committee to hear and decide the matter, which committee after taking considerable testimony on the subject filed its decision affirming the aforesaid order. Thereafter and on October 15, 1947, said North Coeymans School District No. 2 authorized an appeal pursuant to the statute (§ 1505) to the Commissioner of Education from the affirmance of the committee appointed by the County Judge. The commissioner dismissed the appeal in a decision dated June 24, 1949.

About June 17, 1947, in an action instituted in the Supreme Court by the petitioner herein against the trustees of former Coeymans School District No. 2, a judgment for a sum of money remaining in their hands as trustees was entered which, in effect, is claimed to have declared the order of Bouck to be void and to have adjudged that former Common School District No. 2 was a part of the petitioner's district.

On May 25, 1949, the Commissioner of Education pursuant to article 37 of the Education Law laid out Central School District No. 1 for the Towns of Coeymans and New Scotland, Albany County, and New Baltimore, Greene County, within the confines of which he included the territory embraced in Common School District No. 2 of the Town of Coeymans as it existed on December 1, 1946.

The petitioner's first contention is that the act of the commissioner in laying out the district was not within the powers granted to him by the Education Law since that statute does not permit him to remove from a union free school district a portion thereof and to include it within the territory of a central school district thereafter formed, particularly where financial obligations of the union free school district to which it formerly belonged have been incurred and where the district is in a satisfactory educational operation. Such contention has for its premise the fact that the common school district involved is a part of the petitioner's district and has not been dissolved and annexed to another union free school district by the Bouck order. Which of the determinations with respect to the validity of that

order should be adopted need not concern us upon this application in view of the determination to which I have come.

The powers of the commissioner to lay out central school districts are defined in section 1801 of the Education Law which provides as follows:

" 1. The commissioner of education is hereby authorized and empowered to lay out central school districts for the establishment of central schools to give instruction in elementary or elementary and high school subjects and to fix, determine and define the boundaries of said districts as hereinafter provided.

" 2. The commissioner is authorized and empowered to make and enter in his office orders laying out territory in new central school districts or annexing to existing central school districts territory not contained within a city school district in a city having a population of more than five thousand inhabitants. The commissioner in laying out such central school districts and in fixing and defining the boundaries thereof shall include only territory of suitable size conveniently located for the attendance of pupils and having a sufficient number of pupils for the establishment of a central school. The commissioner shall designate all central school districts by name, number and such other description as he shall deem proper.

" 3. Within ten days after the making and entry of the order pursuant to this section, the commissioner shall transmit a certified copy thereof to the clerk, or in the event there is no clerk, to the trustee or trustees of each school district the territory of which is affected by said order. The clerk, the trustee or trustees, as the case may be, shall, within five days after receipt of such order, post a copy thereof in five conspicuous places in such district.

" 4. No central school district laid out by order of the commissioner shall operate as a central school district, nor be entitled to receive the benefits of a central school district until it has been organized by the qualified voters of the district in accordance with the provisions of this article ".

I find no limitation or restriction in the statute of the commissioner's power to establish central school districts and to fix and determine boundaries except that he shall include therein only territory " of suitable size conveniently located for the attendance of pupils and having a sufficient number of pupils for the establishment of a central school ", and shall not include therein a city school district in a city of a given population. In his discretion, he may lay out new central school districts embracing the territory of common school districts, union free school

districts and central school districts except within certain municipalities whose population exceeds 5,000 inhabitants. The section does not prohibit the laying out of a central school district because one of its component parts will thereby be relieved of the payment of obligations incurred by the district to which it was formerly annexed. Nor does it limit its establishment because a school system and program satisfactory to its inhabitants is in effect in an existing school district, the territory of which is taken by his order. The determination of the boundaries of central school districts which necessarily involves the grouping of existing districts and the educational soundness of their creation subject only to the indirect approval of his act by the qualified voters of the created district by its organization pursuant to subdivision 4 of section 1801 of the Education Law are left to the discretion of the commissioner and will not be disturbed if not arbitrarily exercised. That such was the intent of the Legislature has been judicially determined by appellate courts. In *Gardner* v. *Ginther* (232 App. Div. 296, affd. 257 N. Y. 578) on the subject of the authority of the commissioner to determine under the statute what districts should be established and where their boundaries should be, it was said (pp. 300, 304, 306):

" There can be no doubt that the Legislature itself could have solved the problem which it turned over to the Commissioner, but that would not have been feasible. From a practical standpoint the administrative head of the Education Department is in a far better position to lay out the various school districts of the State than is the Legislature, which is in session but a few months each year, and which is busy with thousands of other matters. The nature of the school to be maintained in any particular locality, as well as the territory which shall be included in any given district, is a matter of local interest, in which the State at large has no particular concern. Local needs can easily and satisfactorily be taken care of by leaving the details to the administrative head of the Education Department. * * *

" A practical administration of the school system demands that the State be divided into districts. Someone must have authority to determine what districts shall be established, as well as the boundaries thereof. Such privilege, of necessity, carries with it more or less arbitrary power, whether it be exercised by the Legislature or by some official or body. Of course, the discretion exercised by the Commissioner must be a legal discretion, and not a personal and arbitrary one, designed to further his own selfish purpose, as opposed to the welfare of

the public. * * * The only limit which section 180 puts upon the nature of the territory to be included in the district therein provided for is that it must be exclusive of a city school district. By the use of such language it is apparent that the Legislature had in mind the formation of districts anywhere in the State, outside of the confines of our cities.''

I think that there is no basis to sustain the petitioner's claim that the order under review was arbitrary and capricious. The grounds of the petitioner's claim of capricious and arbitrary conduct by the commissioner in making the order under review are a series of his official acts and those of his subordinates and others claimed to have been under his domination, allegedly improperly performed, in relation to controversial matters which have arisen within or concerning the petitioner's district during the period of its existence or prior to its formation. There is no satisfactory or convincing showing, however, that by reason thereof, caprice and arbitrariness rather than discretion in any way motivated or influenced the decision of the commissioner in making the order under review. Nor does it appear that he has exceeded the discretionary powers vested in him by statute.

There seems to be no real objection by the petitioner to the creation of the central school district or to the territory which the commissioner's order embraced within it except that it includes North Coeymans School District No. 2 around which this controversy essentially revolves.

Insofar as that district is concerned, the commissioner in his determination followed the master plan for school district reorganization in New York State which had been recommended by the Joint Committee of the Legislature on the State Educa-tion System. (N. Y. Legis. Doc. 1947, No. 25.) That committee, better known as the Coudert-Rapp Committee, was created in 1940 and extended to April 1, 1947, by various resolutions of the Legislature and had for one of its purposes the preparation of a State-wide scheme of school district reorganization designed to provide for the improvement of the future educational pro-gram of the State by the reorganization of school districts in larger administrative units. Considerable research and investi-gation were done by that committee, numerous hearings which were attended by interested persons were held in various parts of the State and the result evolved was such master plan. While the commissioner was not required to abide by the findings of that committee, it impresses me that his adoption of its plan in laying out the central school district involved here is a very cogent argument against caprice and arbitrary action on his part.

The commissioner also had before him in making his decision several hundred pages of testimony taken by the committee appointed by the Albany County Judge and also the determination of that committee founded thereon to the effect that the best educational interests of the children of North Coeymans Common School District No. 2 would be promoted by their continued attendance in the schools of the union free school district, both of which school districts are constituent parts of the central school district which has been created.

It should be noted in considering this phase of the matter that the voters of the central school district by a vote of 1017, in favor, to 341, in opposition, approved and confirmed the commissioner's act.

For the reasons above expressed, I am convinced that the commissioner's order was the proper exercise of the discretionary power conferred upon him by statute.

It is claimed by the petitioner that the answer of the respondent is defective in that it raises no issue. While I do not commend it as a precedent, I am satisfied that it has raised the essential issues of this proceeding, viz., the power of the commissioner to make the order and whether he acted capriciously and arbitrarily in so doing.

The petition is dismissed upon the merits and the stay granted herein vacated, without costs.