6 N.Y.2d 871 (1959)
In the Matter of the Board of Education of Union Free School District No. 3 of the Town of Oyster Bay, Nassau County, et al., Appellants,
v.
James E. Allen, Jr., as Commissioner of Education of the State of New York, Respondent.
Court of Appeals of the State of New York.
Argued March 13, 1959.
Decided May 29, 1959.
Henry Root Stern, Jr., and George C. Pratt for appellants.
Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman and George B. Farrington for respondent.
Newton Millham for Board of Education of Union Free School District No. 4 of Town of Oyster Bay, amicus curiae.
Concur: Chief Judge CONWAY and Judges DESMOND, DYE, FULD and BURKE. Judge FROESSEL dissents in the following opinion in which Judge VAN VOORHIS concurs.
Order affirmed, without costs.
FROESSEL, J. (dissenting).
I dissent and vote to reverse and remit the matter to Special Term for a trial of the issues of fact raised by the pleadings and exhibits attached thereto. Whether the order of centralization was arbitrary and capricious and failed to comply with the terms of the enabling statute (Education Law, § 1801, subd. 2) may not be decided on the record presently before us (Civ. Prac. Act, § 1295; Matter of Mandle v. Brown, 5 N Y 2d 51, 65).
I note at the outset that we are not dealing here with the provisions of section 310 of the Education Law rendering certain determinations of the Commissioner of Education "final and conclusive" (cf. Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, decided May 28, 1959). These provisions have no application to the Commissioner's order laying out a central school district under article 37.
In Matter of Board of Educ. of Bethlehem Union Free School Dist. v. Wilson (303 N.Y. 107), we held that the Commissioner's order of centralization was not arbitrary and capricious. There was no trial of issues of fact in that case, since the record before us revealed sufficient justification for the order. The Commissioner there placed particular reliance on the fact that the *874 so-called Master Plan for School District Reorganization had recommended the organization of a central school district along virtually the same lines as the Commissioner's order (Report of Joint Legislative Committee on the State Educational System, N. Y. Legis. Doc., 1947, No. 25, p. 22; see, e.g., Record on Appeal in Bethlehem case, ff. 277-279, Resp. Brief, pp. 14-15). Thirteen of the 18 school districts recommended by the Master Plan for containment in the centralized district were included in the Commissioner's centralization order.
In sustaining the order in that case, Special Term wrote (196 Misc. 239, 244): "Considerable research and investigation were done by that committee, numerous hearings which were attended by interested persons were held in various parts of the State and the result evolved was such master plan [see Committee Report, supra, p. 16]. While the commissioner was not required to abide by the findings of that committee, it impresses me that his adoption of its plan in laying out the central school district involved here is a very cogent argument against caprice and arbitrary action on his part." Our court in its opinion (p. 115) was similarly impressed with the fact that the Commissioner had followed the Master Plan, stating this as the first in a list of circumstances demonstrating the reasonableness of the Commissioner's determination.
The answer of the Commissioner in the instant case and the exhibits thereto attached contain no such supporting factual material. The answer by way of defense simply states very generally the powers of the Commissioner under the Education Law (pars. 17th and 19th), repeats the language of subdivision 2 of section 1801 giving him the power to order centralization (par. 18th), alleges that his action was not arbitrary (par. 20th), and, finally, that "Returned herewith and made a part hereof are the following exhibits:" (1) petition signed by 419 of the 463 qualified voters in appellant District No. 3 (Brookville) objecting to the inclusion of such district in the centralization; (2) petitions of voters of the other two districts requesting centralization; (3) the order laying out the central school district; (4) "Studies made by respondent" in laying out the district.
The "studies" referred to in the answer, at least in part the products of a so-called study group of representatives of the Locust Valley and Bayside districts which met in Albany on September 13 and 14, 1956, consisted of the following:
*875
1. A financial plan with estimated expenditures including the payments of principal and interest on a $1,700,000 bond issue (for the construction of a junior-senior high school), which plan contained the qualification "that the estimates contained in this study are based on many variables, changes in any one of which may materially alter the validity of the estimates made."
2. An admittedly tentative transportation cost survey with a strong recommendation "that a detailed survey be made after centralization". (Emphasis supplied.)
3. An instructional program planning sheet and projected estimates of the number of pupils anticipated for the future elementary and secondary program but with no breakdown whatever as to the number of pupils from the Brookville district who would attend the secondary schools.
The final "study" was a memorandum dated March 14, 1957, from the Chief of the Bureau of Rural Administrative Services to the Assistant Commissioner recommending approval of the establishment of a central school district. This memorandum included the following statements:
"MASTER PLAN

The Master Plan approved a centralization for the Oyster Bay area. This proposal involves about half of the original area. Post-war growth in Nassau County has made it advisable to alter the recommendations for this area.
* * *
STUDIES
The matter of centralization has been under consideration in this area for several years. Recommendations for reorganization were made by the Nassau County School Study Committee in 1951 [not otherwise identified, referred to, quoted from or described]. The Department study was undertaken in September, 1956.
PETITIONS AND SURVEYS
[Statement that there was strong support for the centralization in Locust Valley and Bayville and strong opposition in Brookville] * * * The Brookville district appears to be a reasonable part of the area of the proposal. There appears to be no valid reason why Brookville should not be included with Locust Valley and Bayville in an area suitable for the organization of a central school district." (Emphasis supplied.)
*876 The statement in this recommendation, which was approved and became the basis for the Commissioner's order, purporting to rely in part upon a recommendation in the Master Plan, is totally unsupported by an examination of that document. Indeed, the plan expressly declares at page 467 of the aforesaid Joint Legislative Committee Report that the three Union Free School Districts here involved were among those districts "LEFT FOR FURTHER STUDY AND FUTURE DETERMINATION". It is noteworthy that no mention whatever is made of the Master Plan in the Commissioner's brief in this court. This is in marked contrast to the Bethlehem case (supra) where the Commissioner placed great reliance, as did the court in sustaining him, on the recommendation of the Master Plan.
In making their determination, the draftsmen of the Legislative Plan, who spent four years in its creation, considered the following factors as significant (Committee Report, supra, p. 15):
"1. The educational needs of each area.
a. The number of pupils to be educated.
b. The kind of education to be provided.
2. The amount of wealth available for tax purposes for the support of an educational program in terms of need.
3. The school transportation program.
a. The topography of each area.
b. The location of highways.
c. The kind of transportation facilities available.
d. The time element in the transportation of school children.
4. The social and economic status of each area.
5. The school building facilities.
a. The maximum use of the present school buildings.
b. The minimum building program in future organization.
6. The problems peculiar to each area."
What indication is there in the instant case that the Commissioner has adequately considered all of these factors? Surely the court should not be content with the mere assertion in his brief that "the Commissioner as usual has used meticulous care in the preparation for his final issuance of the order * * *", and the erroneous statement that since "Special *877 Term and the Appellate Division have been unanimous in upholding the Commissioner of Education's order", "It would seem, therefore, that this issue is not before this Court".
The taxpayers (some of whom are parties here) of the appellant school district will be required by the order of centralization to make substantial contributions  because of the district's assessed valuation  to the construction of a high school for the principal benefit of the citizens of the two other districts (since very few of their own children attend public high school), while at the same time they will continue to be responsible for paying off  unassisted  a bonded indebtedness of almost a half million dollars. Surely the district and its taxpayers are entitled to know the justification for this burden in plainer terms than offered in the conclusory statements of the respondent. The court, too, is entitled to know the factual basis for the respondent's determination. Otherwise the review for arbitrariness provided for in an article 78 proceeding such as this is made utterly meaningless.
The order appealed from should be reversed and the matter remitted to Special Term for further proceedings.
Order affirmed.