No. 16,890.

HAZLET ET AL. *v.* GAUNT ET AL.
(250 P. [2d] 188)

Decided October 14, 1952. Rehearing denied November 6, 1952.

Mr. MAURICE W. KONKEL, Mr. ISAAC MELLMAN, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. WILBUR ROCCHIO, Assistant, for State Commissioner of Education.

Mr. LYMAN P. WELD, Mr. EMORY L. O'CONNELL, for all

defendants in error except the State Commissioner of Education.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

We will herein refer to the parties as they appeared in the trial court, where plaintiffs in error were plaintiffs and defendants in error were defendants.

Plaintiffs are citizens and taxpayers residing in Adams county, and their places of residence are within school districts which were added, in whole or in part, to School District No. 27 under procedures authorized by the School District Reorganization Act of 1949. (Chapter 224, Session Laws of Colorado 1949.) In their complaint, the legality of the reorganization of the new district was questioned upon constitutional, and other, grounds. They alleged that the defendant members of the school board for the new district were proceeding under the purported powers designated to them by said Act to issue bonds in the sum of $936,000.00 for school purposes, and that the contemplated bond issue would be illegal and without authority of law.

The prayer of plaintiffs' complaint was for judgment that all acts of defendants performed in the capacity of the County Committee on school reorganization, together with all acts of defendants performed in the capacity of members of the newly created school district and as public officials in furtherance of said reorganization, be declared null and void, and that defendants be enjoined from further acts based upon the validity of said reorganization.

Defendants in their answer placed all material questions of fact in issue. Trial was to the court and resulted in judgment in their favor. Plaintiffs, seeking a reversal of this judgment, bring the case here by writ of error.

The School District Reorganization Act of 1949 es-

tablishes procedures for the reorganization of school districts and defines in detail the steps to be taken in the accomplishment of that objective. The selection of a County Committee is authorized and this body is empowered to set in motion a chain of events which ultimately leads to an election to determine whether the plan of reorganization, which the committee and State Commissioner of Education approve, shall become effective. These procedures were followed in the instant case. An election was held in conformity with the statute, whereby the proposed reorganization of school districts was approved by a majority of the voters casting ballots under the qualifications fixed by the Act.

Section 14 of the Act (amended S.L. '51, p. 749) provides, inter alia: "The plan for reorganization shall contain a specific proposal for the equitable adjustment and distribution of all, or any part, of the properties and cash assets of the districts involved."

Section 22 of the Act provides, inter alia: "Electors voting in said election shall be taxpaying electors, shall be of the age of twenty-one years, citizens of the United States, and shall have resided in the State for twelve months immediately preceding the election and shall have resided in the area of the 'proposed district' for at least ninety days immediately preceding said election."

Section 25 of the Act (amended S.L. '51, p. 750) provides, inter alia: "If a majority of the votes cast in the area of the 'proposed new district' shall vote in favor of said reorganization the same 'new district' shall upon the sixtieth day after certification of the results of said election to the County Superintendent, be and become a body corporate under the name, style and number in the plan, and in that name may take, hold and convey property, both real and personal and be a party to suits and contracts in the same manner and to the same extent as municipal corporations of this state; * * *."

The said Act further provides that, in determining the boundaries of a new district, "present district boundaries

may be disregarded, and districts, or parts of districts may be included in a new district proposed to be organized, * * *." In those instances where the new district embraces all the area of a former district, the school funds, except those for the retirement of bonded indebtedness, and assets of the old district become the property of the new district. Where only a portion of an old district is included within the area of the new district the moneys of the former are apportioned as provided by section 66, chapter 146, '35 C.S.A.

Section 30 of the Act provides, inter alia, that: "When a 'new district' formed under this Act shall embrace all of a Union or County High School district such Union or County High School District shall be automatically dissolved and the properties and funds, except funds then on hand or to be received under existing tax levies, after providing for all outstanding indebtedness and obligations, except bonded indebtedness, shall become the property of the 'new district.' "

The new district involved in this cause is described as District No. 27. It extends the old District No. 27 to include all of three former separate districts and portions of four others. Old District No. 27 included the city of Brighton and surrounding area, most of which is heavily populated, whereas the districts absorbed in whole or in part are for the most part rural areas with comparatively few inhabitants. By the reorganization, the area of District No. 27 was doubled and the assessed valuation of included properties was increased from $7,980,230.00 to $9,360,440.00.

Plaintiffs contend that the provisions of the statute, fixing the qualifications of voters and authorizing formation of the new district upon majority vote of the qualified electors within the entire district, result in the sparsely inhabited rural districts being forced against the will of a majority of the inhabitants thereof to become part of the new district. It is argued by counsel for plaintiffs that this amounts to a violation of their

constitutional right to due process of law. They further assert that the Act contravenes sections 2 and 15 of Article IX of the Constitution of Colorado, which read as follows:

Section 2: "The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously. One or more public schools shall be maintained in each school district within the state, at least three months in each year; any school district failing to have such school shall not be entitled to receive any portion of the school fund for that year."

Section 15: "The general assembly shall, by law, provide for organization of school districts of convenient size, in each of which shall be established a board of education, to consist of three or more directors to be elected by the qualified electors of the district. Said directors shall have control of instruction in the public schools of their respective districts."

It further is argued that since the area included within the new district is nearly doubled, children are not provided a "thorough and uniform system of free public schools," and that the enlarged district is not designed to serve a particular community in that it is not compact and is not of "convenient size" as required by section 15 of Article IX above quoted. Finally, it is contended that the Act in question amounts to unlawful delegation of legislative power to the County Committee.

Questions to be Determined.

First: *In authorizing procedures for the reorganization of school districts, does the legislature have the power to provide for the inclusion of existing districts, or portions thereof, in a new proposed district, and to direct transfer of assets of the existing districts to the new one, notwithstanding the fact that the existing districts and a majority of the electors residing therein may in fact op-*

*pose the reorganization and the resultant transfer of assets?*

█ This question is answered in the affirmative. We direct attention to the fact that plaintiffs in this action appear as individual citizens and taxpayers living in areas included within school districts affected by the reorganization plan in question. They allege that they have paid taxes in support of public school districts and that said districts have been abolished by the action of the defendants. No school district, through its authorized officers, appears in objection to the proposed reorganization. Before an individual taxpayer could successfully contend that he was denied property without due process of law, because of the inclusion or exclusion of the area occupied by him from a reorganization of school districts, it would be necessary to accept as a premise the proposition that an individual taxpayer has an interest in school property which is protected by the Constitution against deprivation thereof without due process of law. We think it is well established that an individual taxpayer has no such property interest in assets devoted to school purposes.

In *Gorrell v. Bevans,* 66 Colo. 67, 179 Pac. 337, we said: "The territory of the district is not its property but merely within its jurisdiction, if we may so use that word. The legislature changes the boundaries of counties and other *quasi* municipal corporation at will, without violating anybody's constitutional rights, which it could not do if the land were property. There is, therefore, no question of due process of law concerning the transfer of the territory.

"The argument that the school house or some interest therein is the property of the directors or individual taxpayers and that by its transfer the constitutional rights of the plaintiffs as school directors or as individuals have been invaded we do not regard as sound. The directors have no interest as such. The property is not theirs but the district's. R.S., §§5913-14. The individual

taxpayers do not own the property nor have they any legal or equitable interest in it."

In *Newt Olson Lumber Co. v. School District*, 83 Colo. 272, 263 Pac. 723, we quoted with approval from *Florman v. School District*, 6 Colo. App. 319, 322, 40 Pac. 469, 470, as follows: "A school district is a subdivision of the state for educational purposes. The several officers charged with the supervision of the schools, from the state board of education down to the directors of the school district, are merely the instruments of the state government, chosen for the purpose of effectuating its policy in relation to schools. * * * The school district is created as a means for the more convenient and effective carrying out of the educational policy of the state. The entire control of schools and school property is in the state, to be exercised as it may see fit, subject to the requirements and restrictions contained in the constitution; and school officers and school districts are merely the agencies through which it acts in the performance of duties with which it is charged by that instrument."

In *People ex rel. v. Sours*, 31 Colo. 369, 74 Pac. 167, the 20th Amendment to the Constitution of Colorado was attacked upon the ground that it violated the provisions of the Constitution of the United States in that it took property from some existing towns and gave it to the City and County of Denver, without due process of law. We there said: "Under the first objection it is said that some of the adjoining towns have by this amendment lost their public property—that, as the people of these towns had erected town buildings, these town buildings will be taken from them because the towns themselves are consolidated with Denver. That the people of other towns, excluded from the City and County of Denver, have contributed to the erection of public buildings in Arapahoe county, and that they will lose their share or interest in such public buildings and be required to contribute to the erection of public build-

ings in a new county. These are incidental and unavoidable conditions, which exist whenever the boundaries of counties are changed or municipalities are consolidated. These municipalities exist for the public convenience, their property is the property of the public, and is held, not as private property, but subject to the changing conditions and requirements of local government."

■ We believe the law to be well settled that consent of particular districts, or the inhabitants thereof, is not necessary as a constitutional prerequisite to the changing of boundaries, dissolution or division of school districts, or to the transfer of assets from an existing school district to the larger reorganized district of which it becomes a part. Whether such consent should be required before reorganization is effected is a question of legislative policy. There is nothing in our Constitution which prohibits the legislature from authorizing the reorganization upon majority vote of all the electors in the proposed new district, even though it might not be desired by an included school district or by the electors in some particular district included within the reorganization plan. The questions raised involve expediency, propriety and efficiency of methods in providing education through the public schools, and as such are addressed to the legislative branch of government.

In *School District No. 68, Yamhill County v. Hoskins*, 194 Ore. 301, 240 P. (2d) 949, the Supreme Court of Oregon said: "The formation, dissolution, and change in boundaries of school districts are legislative matters. School districts may be abolished or dissolved at the will of the legislature, subject, of course, to constitutional limitations, if any. It is not necessary that the districts affected give their consent to such action, except as otherwise provided by statute. A change of boundaries of school districts may occur in a variety of instances, as in the case of consolidation of districts, division to create new districts, taking from one district and adding

394

to another, cutting off a part of a district, annexing unorganized territory to a district, etc. In 47 Am. Jur., Schools, 310, §18, it is stated:

" ' * * * The legislature has full power to change boundaries of districts without the consent of the districts affected, except so far as it may be limited by the state constitution.

" 'Whatever the nature of the change, it is settled that *the boundaries of school districts may be changed at the will of the legislature.* In the exercise of its power, the legislature may act directly, or it may delegate its power to subordinate authorities without violating the general rule against the delegation of legislative power.' "

To like effect are the opinions in the following cases: *Prosper Independent School District v. County School Trustees* (Texas), 58 S.W. (2d) 5; *State ex rel. v. Common School District No. 87,* 163 Kans. 650, 186 P. (2d) 677; and *Wheeler School District No. 152 v. Hawley,* 18 Wash. (2d) 37, 137 P. (2d) 1010. The reason for the conclusion of these authorities is well stated by the Supreme Court of the United States in *Hunter v. City of Pittsburgh,* 207 U. S. 161, 28 Sup. Ct. 40, 52 L. Ed. 151, as follows: "Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within

the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, * * *. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it." The above quotation is applicable to school districts as well as to municipal corporations. *Attorney General ex rel. Kies v. Lowrey,* 199 U.S. 233, 26 Sup. Ct. 27, 50 L. Ed. 167.

Second: *Does the School District Reorganization Act of 1949 violate the Constitution of the State of Colorado in that it provides for an illegal delegation of legislative power to administrative officers or to individuals?*

This question is answered in the negative. We think it a sufficient answer to the argument made by plaintiffs' counsel on this question to direct attention to the opinion of this court in *Sapero v. State Board of Medical Examiners,* 90 Colo. 568, 11 P. (2d) 555. In that case we said: "The general assembly may not delegate the power to make a law; but it may delegate power to determine some fact or a state of things upon which the law, as prescribed, depends. *Colorado and Southern Railway Co. v. State Railroad Commission,* 54 Colo. 64, 84, 129

Pac. 506; *Field v. Clark*, 143 U. S. 649, 694, 12 Sup. Ct. 495, 36 L. Ed. 294. See also 48 C.J., page 1096, section 64, as applied to physicians and surgeons.

"The subject of nondelegable powers covers a wide range, but we adopt the concise statement employed by our highest court in *Field v. Clark, supra*, at pages 693, 694 of its opinion, which reads: 'The true distinction * * * is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' *Cincinnati, Wilmington etc., Railroad v. Commissioners*, 1 Ohio St. 88. In *Moers v. City of Reading*, 21 Penn. St. 188, 202, the language of the court was: 'Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law.' "

█ The contention urged before us in the instant case was argued before the Supreme Court of Washington in the case of *Wheeler School District No. 152 v. Hawley, supra*. We quote from that opinion as follows: "Nor do we find any unlawful delegation of legislative power. The act sets up the machinery and fixes the standards by which the county committee and the state committee shall be controlled. It commits no legislative power to them. It simply entrusts to them the administration of the act." Numerous citations of authority follow the above quotation. Section 12 of the Act sets up sufficient standards for the guidance and direction of those authorized to administer the law. It is argued that those standards are not definite enough. We cannot agree.

In 16 C.J.S., page 351, §138a, we find the rule stated in part as follows: "The legislature is not required to

legislate for the guidance of executive agencies further than is practicable, and, if the circumstances require, may express the policy or standard in merely general terms."

In 11 American Jurisprudence, page 957, section 240, we find the following statement: "As far as the actual terms of the standard laid down are concerned, there seems to be considerable leeway, because the courts have indicated that the policy of the lawmaking body and the standard to guide the administrative agency may be laid down in broad and general terms."

 School districts are subdivisions of the state and are created only through legislative authority. Because few, if any, restrictions are placed upon the legislative power in school affairs, by the constitution, the legislature has almost unlimited power to abolish, divide or alter school districts. It has been generally recognized that this broad discretionary power to change the boundaries of school districts may be delegated by the legislature to administrative bodies to be exercised under certain conditions, and in agreement with certain standards. 135 A.L.R. 1098 (note).

We have carefully considered the arguments made by counsel for plaintiffs in support of the proposition that the School Reorganization Act violates sections 2 and 15 of Article IX of the Constitution of Colorado, and we do not find sufficient merit in these arguments to warrant detailed analysis or discussion.

The judgment accordingly is affirmed.

Mr. Justice Alter and Mr. Justice Holland dissent.