No: 22295.

SCHOOL DISTRICT NO. 1 OF MORGAN COUNTY, COLORADO
v. SCHOOL PLANNING COMMITTEE OF MORGAN COUNTY,
COLORADO, ELECTED AND EXISTING UNDER THE SCHOOL DIS-
TRICT ORGANIZATION ACT OF 1957, THE SAME BEING ART.
25, CH. 123, C.R.S. '63; MARIAN LOCKWOOD, COUNTY SUPER-
INTENDENT OF SCHOOLS OF MORGAN COUNTY, COLORADO
AND NONVOTING MEMBER AND SECRETARY OF THE SCHOOL
PLANNING COMMITTEE OF MORGAN COUNTY, COLORADO.

(437 P.2d 787)

Decided January 22, 1968. Rehearing denied March 18, 1968.

542

WM. ALBION CARLSON, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

MORGAN County School District No. 1, plaintiff in error here, commenced this action in the district court praying for a judgment declaring null and void the defendant . in error's plan for reorganization of certain school districts. In addition, a declaratory judgment was sought that the legislation pursuant to which the School Planning Committee was created, violates certain con-

stitutional provisions. Specifically it is claimed that the School District Organization Act of 1957, now C.R.S. 1963, 123-25-1 *et seq.*, violates the Fourteenth Amendment of the United States Constitution and Section 25, Article II of the Colorado constitution by depriving this plaintiff of its property and the right to control and operate its schools; and, that the Act violates Article III of the Colorado constitution by delegating legislative power and authority to an administrative agency and officers not in the legislative branch. From the judgment of the district court dismissing its complaint after a hearing thereon, the School District brings this writ of error.

We shall refer to the plaintiff in error as the plaintiff or School District; to the defendants in error as the Planning Committee, or Committee; and to the School District Organization Act of 1957, C.R.S. 1963, 123-25-1 *et seq.*, as the Act or statute.

The Planning Committee was organized in July 1963 for the purpose, *inter alia,* of drafting a plan for the reorganization of the thirteen school districts within its jurisdiction. The general plan adopted at the Committee's November 17, 1964, meeting called for supersedure of the thirteen existing districts by four new districts, to be designated as Re-2, Brush; Re-3, Fort Morgan; Re-20, Weldon Valley; and Re-50, Wiggins. The Committee held public hearings on the plan for District R-2, Brush (which is the subject of this controversy), on December 8, 1964, and then submitted the plan to the State Commissioner of Education for approval. On December 29, 1964, the Commissioner officially approved the final proposed plan. An election was held upon due notice thereafter within the proposed Re-2 District on January 26, 1965. This resulted in acceptance of the plan by a vote of 780 "for" to 223 "against."

For reversal the School District urges numerous grounds which we have elected to consider under the titled captions set forth *infra.*

*FIRST: DOES THE ACT VIOLATE EITHER THE FEDERAL OR STATE CONSTITUTIONS (THE FOUR-TEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION OR SECTION 25, ARTICLE II OF THE COLORADO CONSTITUTION) BY DEPRIVING THIS PLAINTIFF OF WHAT IT ASSERTS IS ITS PROPERTY AND THE RIGHT TO CONTROL AND OPERATE WHAT IT CLAIMS ARE ITS SCHOOLS?*

██ We hold that it does not. In *Hazlet v. Gaunt,* 126 Colo. 385, 250 P.2d 188 (1952), this court, in passing upon a prior school reorganization statute, made it crystal clear that the legislature has plenary powers to determine the number, nature and powers of school districts and their territory; further, that the legislature may modify or withdraw all such powers as it pleases. The rationale of that decision governs this case. It follows that plaintiff has no right to the school property formerly within its jurisdiction and no right to control or operate public schools in that geographical area.

*SECOND: DOES THE ACT VIOLATE ARTICLE III OF THE COLORADO CONSTITUTION BY A DELEGA-TION OF LEGISLATIVE POWER?*

██ Again we hold that it does not. Plaintiff's argument in this connection rests upon the premise that the Committee's conduct in drafting the Re-2 plan radically departs from the statutory guidelines set up by the Act. Suffice it to say in this regard that a reading of this record fails to disclose any evidence of such a departure. In fact, from what hereinafter appears in this opinion, it can be seen that the Committee was meticulous in carrying out the rather detailed requirements of the statute. We conclude therefore that the Act does not delegate legislative powers and that the Committee carried out its legislatively assigned duties well within the framework of the statute.

*THIRD: DID THE COMMITTEE COMPLY WITH PRO-VISIONS OF THE ACT RELATING TO JOINT DIS-TRICTS IN DRAFTING AND SUBMITTING THE PLAN?*

The record shows that the new District, Re-2, Brush, consists of former School Districts 1, 2, 7, 9, 13, 18 and Joint District 10. Each of these superseded districts lies entirely within Morgan County, except for the Joint District which includes territory within both Morgan and Washington Counties. The plaintiff correctly observes that the Planning Committee drafted and adopted its reorganization plan for District Re-2 without consulting its co-equal body in Washington County — assuming Washington County in fact had an equivalent school planning committee.

C.R.S. 1963, 123-25-14 of the Act requires committees of both counties involved to approve a reorganization plan which includes a joint district. Although the defendant Committee here apparently made no effort to present its plan to Washington County, it affirmatively appears that measures were taken within the Joint District which rendered the approval of both counties unnecessary. C.R.S. 1963, 123-25-4(9) provides:

"* * * Upon the effective date of this subsection, the board of education of a joint school district located in two or more counties * * * may designate by a majority vote of its qualified school district electors one of the counties as the county in which the district will participate for county planning committee purposes on and after that date. * * * The county committee selected by the electors shall have within its jurisdiction the territory of said joint district for the purposes or [sic] organizing school districts under this article. * * *."

In the instant case the board of directors for Joint District 10 conducted a referendum election to determine its county of affiliation. In that election, the electorate of the Joint District voted to be included in the

Morgan County Planning Committee's reorganization plans. The Committee, therefore, properly concluded on the basis of these certified election results that it was not obliged to secure approval of its Re-2 plan from Washington County's Planning Committee.

██ Plaintiff though urges that the Joint District's election returns, as certified to the Committee, are silent as to whether the Joint District's board of education complied in every detail with the statutory election procedures. That election, however, carries a presumption of validity. *Felzien v. School District*, 152 Colo. 92, 380 P.2d 572 (1963). The burden of proof was on plaintiff to show by competent evidence non-compliance with the mandatory statutory procedures — and this it failed to do. *People ex rel. Roberg v. Board of Commissioners*, 86 Colo. 249, 281 P.117 (1929); *Price v. Archuleta*, 17 Colo. 288, 29 P. 460 (1892).

*FOURTH: DID THE PLANNING COMMITTEE COMPLY WITH PROVISIONS OF THE ACT REQUIRING THAT THE PRESIDENT OF THE JOINT DISTRICT BE MADE A MEMBER OF THE COMMITTEE? AND, WAS IT ERRONEOUS TO APPOINT SOMEONE OTHER THAN THE PRESIDENT WHEN THE FIRST APPOINTEE RESIGNED?*

The transcript of the Committee's proceedings shows that the president of the board for Joint District 10, Edward Hauserman, was an original member of the Planning Committee, but resigned from the Committee on November 17, 1964. Hauserman's successor, Merten Jefferies, a resident of Joint District No. 10, accepted appointment on December 3, 1964.

Again plaintiff relies on 123-25-4(9) of the Act for invalidity of the actions complained of. It states in pertinent part:

"* * * If no member of the board of such [joint] district is a member of said planning committee, the president of the board of such joint district shall be

made a member of the county committee by the county superintendent; * * *."

▮ It is obvious from a reading of the statute that the president of the joint board "shall be made" a member of the committee only under the condition set forth. That requirement was fulfilled by Hauserman's original appointment. We find nothing in the Act that required his perpetual membership on the board; in fact that would not be possible, for example, in case of his death or removal from the district. And it certainly was not the legislative intent that proceedings such as these cease entirely on the death or resignation of a member, for both 123-25-4 and 123-25-6 provide how vacancies are to be filled, and no showing has been made that Jefferies was not appointed pursuant to the statute. We conclude, therefore, that Hauserman's voluntary resignation did not defeat the Committee's jurisdiction to proceed with its adoption of the reorganization plan and that the appointment of his successor was proper.

*FIFTH: WAS THERE COMPETENT EVIDENCE THAT THE PLANNING COMMITTEE COMPLIED WITH THE STATUTORY NOTICE PROVISIONS?*

▮ C.R.S. 1963, 123-25-15(2) requires, among the notices to be given of the filing of the map and statement, the posting of notices at five public places "within any such proposed district" prior to hearings on the reorganization plan. Plaintiff urges that the site of the Committee's fifth notice, *i.e.*, the Morey School near Brush, Colorado, is not a "public place" within the meaning of the statute. The trial court took evidence on this matter which showed that the Morey School had been used as a public polling place since its abandonment by the school district in 1960; that the former school building was conveniently located; and that no other government, public or commercial buildings were located in that old school district. The trial court resolved this factual question against the plaintiff's con-

tention. There being ample supporting evidence, we, of course, will not disturb that finding.

*SIXTH: COULD THE PLANNING COMMITTEE PROPERLY MODIFY THE PROPOSED REORGANIZATION PLAN WITHOUT NOTICE PRIOR TO THE PUBLIC HEARING, AND AGAIN AFTER THE HEARING WITHOUT THE NECESSITY OF FURTHER NOTICE AND FURTHER PUBLIC HEARINGS?*

 It appears that the Planning Committee scheduled a public hearing on the proposed Re-2 reorganization plan for December 8, 1964. Prior to that date, on December 2nd, the Committee effected a minor change in the term of office for directors in the new proposed district. The record shows that the reorganization plan was available at all times prior to the hearing at the county superintendent's office, as stated in the public notices of hearing. Moreover, at the December 8th hearing the modifications were fully explained to those in attendance. On the basis of these facts, we conclude that the Planning Committee substantially adhered to the statutory provisions regarding notice and public hearings on the proposed reorganization plan.

 The Act itself does not prohibit a committee's modification of its plan subsequent to the public hearings. The purpose of the hearing is so that the committee can be informed of changes in the reorganization plan deemed necessary or desirable by persons directly affected. In this connection, 123-25-16 expressly provides:

*"After such hearings the committee may make any changes in such proposed plan as to it shall seem advisable and shall then approve such proposed plan.* Thereupon a copy of such proposed plan, together with a map showing the boundaries of any proposed district and a statement showing the facts considered pertinent by the committee in arriving at its approval of such proposed plan, shall be submitted to the commissioner for consideration. If the commissioner shall desire to

suggest any changes or amendments in such proposed plan, the commissioner's changes or amendments together with the proposed plan shall be returned to the committee and conferences had between the commissioner or his special assistant or other assistants to the end that a mutually satisfactory plan may be perfected, if reasonably possible. Maps and statements showing revised plan arrived at after conference with the commissioner or his assistants shall be filed with the county superintendent and hearings shall be held thereon and notice thereof given as provided in the preceding section for any original plan." (Emphasis added.)

The plaintiff also insists, however, that the unemphasized portion of 123-25-16, as above quoted, imposes a requirement of additional public hearings when a committee modifies a reorganization plan after the first hearings. We note though that the Section expressly prescribes notice and hearings only in the situation where the state commissioner has recommended amendments which the Planning Committee thereafter incorporates into a revised plan. That is not the situation here.

In addition, the Act is silent as to whether public hearings must be held under 123-25-15(2) and 16 where a committee itself has effected modification of a plan either *before* or *after* the public hearings prescribed in 123-25-15. However, disclosure to the electorate of a committee's changes is assured by other means, namely, the "meeting to explain" described in 123-25-21(3) wherein it is provided:

"(3) Prior to such election a meeting, or meetings, of the electors in the area to be included in the proposed district shall be held in a convenient place, or places, within the area, at which meeting, or meetings, the plan or organization of the school districts in such area shall be fully explained. * * *."

This record shows that the Planning Committee held the explanatory meeting required by 123-25-21(3) and

fully explained to those present the meaning and effect of its reorganization plan for District Re-2. We, therefore, find no merit to this objection.

*SEVENTH: DID THE NEW RE-2 PLAN COMPLY WITH C.R.S. 1963, 123-25-12?*

 Section 12 of the Act provides in pertinent part: "* * * No plan of organization shall be subject to a vote in this article provided unless: * * * (4) The plan shall set forth the considerations of section 123-25-11 and all other details as may have been determined by the committee and approved by the commissioner."

Here the Committee's reorganization plan devotes twelve paragraphs to the assessment of factors listed in 123-25-11. Such considerations as educational needs, tax equalization, indebtedness, and transportation of schoolchildren are set forth at length. From this record it appears that the trial court properly rejected this captious objection and found substantial compliance with the requirements of 123-25-12.

*EIGHTH: DID THE PLANNING COMMITTEE DEPART FROM THE STATUTORY REQUIREMENTS IN ITS DESIGNATION OF "DIRECTOR DISTRICTS" WITHIN THE NEW RE-2 DISTRICT?*

Plaintiff urges that there was non-compliance with 123-25-13(2), which provides:

"A plan shall provide a specific plan of representation for the members of the board of education of the proposed district. Said proposed district shall be subdivided into five to seven director districts as recommended by the committee and commissioner. Each subvision shall be represented by one director and shall be as nearly as practical contiguous, compact, *and shall contain substantially the same number of people as each other director district.* * * *." (Emphasis added.)

Here the reorganization plan for District Re-2 *prima facie* would appear to contain an unjustified disparity between the population residing in the seven director

districts and thus to be violative of the above quoted Section. In this connection, the evidence reveals the following:

| Director District | Approximate Population |
|---|---|
| A | 1800 |
| B | 1800 |
| C | 1600 |
| D | 400 |
| E | 600 |
| F | 600 |
| G | 700 |

The Planning Committee, however, urges that such a variance is not fatal in view of our holding in *Berni v. Cook*, 153 Colo. 444, 386 P.2d 588 (1963). In *Berni* we construed the provisions of the statute pertaining to the nomination of school board directors and provisions of the Colorado constitution pertaining to the election of such directors. We there concluded that Article IX, Section 15 of the constitution required the election of directors by all voters within the school district, while the Act itself only required nomination of the directoral candidates from the director districts in which they reside.

As we view it, *Berni* has no application to the facts of this case. Here the legislative intent in 123-25-27(4) is that each district have one of its own residents as a director. In addition, it would seem to follow that the manifest legislative intent requires substantial equality of population between the director districts so that no one director district has a disproportionate representation on the school board. The pertinent wording of the statute is:

"* * * Any person desiring to be a candidate for the office of director of a new district formed under the provisions of this article shall be a resident of the director district which he seeks to represent. * * * If a member of the board shall become, during his term of

office, a non-resident of the director district from which elected, he shall be deemed thereby to vacate his office. * * *." [C.R.S. 1963, 123-25-27(4)]

Here where thirty-one per cent of the population can control a majority of the board, the legislative intent is obviously frustrated and that part of the plan is illegal and void.

*NINTH: DOES THE INVALIDITY OF THAT PORTION OF THE PLAN DESIGNATING DIRECTOR DISTRICTS RENDER THE ENTIRE RE-2 DISTRICT REORGANIZATION PLAN NULL AND VOID?*

 The plaintiff urges an affirmative answer to this question, however, we believe the contrary to be true for reasons hereinafter stated.

 A valid analogy can be drawn between the instant case and one where a portion of a legislative enactment is declared constitutionally invalid. The question then arises as to whether the remaining provisions of the enactment must also fall. In such a situation, the remaining portions of the statute will be held valid if they are complete in themselves and can be given legal effect, *Home Owners' Loan Corporation v. Public Water Works District No. 2*, 104 Colo. 466, 92 P.2d 745 (1939); and, if the invalid portion was not an essential, pervasive part of the Act. *Four-County Metropolitan Improvement District v. Board of County Commissioners*, 149 Colo. 284, 369 P.2d 67 (1962); *Colorado Nat. Life Assurance Co. v. Clayton*, 54 Colo. 256, 130 P. 330 (1913).

 Here the creation of the director districts' boundaries within District Re-2 constituted but a minor element within a broad scheme to improve education within the reorganized school district. Our nullification of the invalid apportionment does not eviscerate the entire scheme, and the reorganized school district can continue to function subject only to a correction of the imbalance noted. Indeed, the legislature expressly contemplated changes in director district boundaries to correct dis-

parities of population in C.R.S. 1963, 123-25-34; also see C.R.S. 1963, 123-31-10 (1965 Perm. Supp.). This Section provides in part:

"* * * [T]he board of education of any new district formed under this article shall have the power and authority: * * * (d) From time to time to propose revisions and redesignations of the boundaries of director districts in order to compensate for changes in school district boundary lines and for shifts in population * * *."

It is therefore proper to remand this portion of the controversy to the trial court with directions to order the new board of education to establish new districts which meet the requirements of the statute in this regard.

The judgment of the district court is affirmed except as to that portion which upholds the provisions of the plan for District Re-2, Brush, creating director districts with substantially disparate populations, and as to the latter it is reversed with directions to the trial court to order the new District promptly to prepare and adopt a plan in conformance with the requirements of C.R.S. 1963, 123-25-13(2) (1965 Perm. Supp.) and C.R.S. 1963, 123-25-17 (1965 Perm. Supp.), such to be followed by an election of the new directors at the next biennial election to be held in 1969 in conformance with C.R.S. 1963, 123-25-26 (1965 Perm. Supp.).

It is so ordered.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE KELLEY concur.