Hon. Dan Noble State Senator Senate Majority Office State Capitol Denver, Colorado 80203
Dear Senator Noble:
You have requested a written opinion regarding certain sections of Senate Bill 35, enacted in 1977, relating to the distribution of royalties received under the Federal Mineral Lands Leasing Act. Your questions will be answered in the sequence asked.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Pursuant to S.B. 35 (enacted in 1977), may the moneys that are allocated to a county be paid to a school district by a county?
 This question is answered in the affirmative. It is my opinion that under C.R.S. 1973, 34-63-102(3)(a), as amended by S.B. 35 in 1977, a county may distribute moneys it receives from the Mineral Leasing Fund to school districts.
2. If the moneys are paid to a school district or other political subdivision, may such moneys be paid directly to such school district or political subdivision without entering into an intergovernmental contract?
 Authority for intergovernmental contracts is found in art. XIV, § 18, and art. XI, § 2, Colo. Const. The statutory implementation is found in C.R.S. 1973, 29-1-201 et seq.
3. Is it mandatory that a county pay a portion of such moneys to a school district or other political subdivision?
The answer is "no."
ANALYSIS
Regarding question 1, Art. XI, § 7 of the Colorado Constitution reads as follows:
 No provision of this constitution shall be construed to prevent the state or any political subdivision from giving direct or indirect financial support to any political subdivision as may be authorized by general statute.
This language, effective January 1, 1972, permits one political subdivision to assist financially another political subdivision when authorized by statute.
It is well established that counties are political subdivisions.See: Board of County Commissioners of the Countyof Otero v. The State Board of Social Services,186 Colo. 435, 528 P.2d 244 (1974); Board of CountyCommissioners of the County of Dolores v. Love,172 Colo. 121, 470 P.2d 861 (1970). And it is also well established that school districts are political subdivisions. SeeHazlet v. Gaunt, 126 Colo. 385, 250 P.2d 188 (1952);Bagby v. School District No. 1, 186 Colo. 428, 528 P.2d 1299
(1974).
The issue then is whether S.B. 35, enacted in 1977, authorized counties to pay any or all of their share of moneys from the Mineral Leasing Fund to school districts.
S.B. 35 was enacted to reflect the broadened scope of permitted uses for these funds under the 1976 amendments to the Federal Mineral Lands Leasing Act. These amendments increased the funds available to the states, and broadened the permitted uses for the moneys. Prior to the amendment, the Federal law required that states use the moneys only for public schools and for public roads. Now these moneys can be used for the planning, construction and maintenance of public facilities, and for the provision of public services (See 30 USCA section 191).
Prior to S.B. 35, C.R.S. 1973, 34-63-102 allocated 33 1/3 percent to the public school fund for public schools, and 67 2/3 percent to the counties for public roads and public schools. The restrictions on use reflected the Federal restrictions.
With the amendments in S.B. 35, 25 percent is paid into the public school fund for public schools, and 50 percent is paid to the counties to be used as required, for planning, construction, and maintenance of public facilities and for public services. The current restrictions reflect the expanded Federal language.
Allocating 25 percent of the moneys to the public school fund for support of our public schools is clearly permitted under the broadened restrictions. School buildings are public facilities, and providing for public schools is providing a public service. Support for public schools which used to be one of two permitted purposes is now one of many permitted purposes.
The same reasoning and rationale applies to the use the counties can make of the moneys. Prior state law restricted counties to using these moneys to support schools and roads- reflecting Federal restrictions. The amended provision merely reflects the expanded Federal language, and encompasses the expanded restrictions.
Counties continue to be authorized to pay these moneys to school districts. They may also use the moneys for any other public facility or public service. In tracking the new Federal language, the General Assembly was only expanding the possible areas of expenditure, not restricting them.
Consideration also must be given to art. XI, § 2, Colo. Const., which prohibits the state, any county, city, township or school district from making any donation or grant to any corporation, public or private. This is a part of the original Constitution.
In construing different provisions of the Constitution, such as art. XI, § 2 and § 7, the provision must be regarded as inpari materia. The Constitution should also be construed as one instrument, regardless of the date of enactment of the various provisions.
To follow these principles of constitutional construction, it is necessary to interpret "public corporations" as used in art. XI, § 2 as excluding "political subdivisions" as used in art. XI, § 7.
In further support of this analysis is the principle of constitutional construction that the specific intent section is to govern over the general intent section. Here, art. XI, § 7 is specific as it refers to political subdivisions, whereas art. XI, § 2 is of wider applicability.
Therefore, it is my opinion that counties may continue to pay these moneys to school districts and that the constitutional requirements of art. XI, § 7, Colo. Const., have been met by S.B. 35, as enacted in 1977.
Regarding question 2, however, the concept of an intergovernmental contract is inapplicable to the payment of these moneys to school districts. Counties are not contracting for a service which they are to provide. Rather, the counties are making a distribution of these funds subject to a budgetary process.
It is my opinion that an intergovernmental contract is not required should a county pay these funds to a school district.
As to other political subdivisions, the answer would depend on the nature of the public facility or public service to be provided. If the payment were in the nature of a grant or distribution, no contract would be required. However, if the payment was for the provision to the county by another political subdivision of a service or a facility, a contract would be appropriate under C.R.S. 1973, 29-1-203.
Regarding question 3, S.B. 35 is an authorizing statute. These moneys may be paid by counties to school districts or other political subdivisions for the specified purposes. The county is also authorized to expend all or part of these moneys itself for the specified purposes. The language is permissive, not mandatory.
SUMMARY
To highlight this opinion, counties may continue to pay all or part of their share of moneys received from the Mineral Leasing Fund to school districts, under C.R.S. 1973, 34-63-102(3), as amended by S.B. 35. An intergovernmental contract is not required for payments to school districts, but might be for payments to other political subdivisions, depending on the facilities and services to be provided. Counties have the authority to pay those moneys to school districts and other political subdivisions, but they are not required to do so, as the statute is permissive, not mandatory.
Very truly yours,
 J.D. MacFARLANE Attorney General PUBLIC FUNDS COUNTIES SCHOOL DISTRICTS
C.R.S. 1973, 34-63-102(3)(a)
Colo. Const. art. XI, § 7
Colo. Const. art. XI, § 2
Colo. Const. art. XIV, § 28
LEGISLATIVE BRANCH Senate
A county may lawfully distribute mineral leasing moneys to a school district without entering into an intergovernmental contract, but such distributions are not mandatory.