The Honorable Robert F. Burford Speaker, Colorado House of Representatives State Capitol Building Denver, Colorado 80203
Dear Representative Burford:
In your letter of August 20, 1979, you asked three questions regarding the transfer of ownership of property owned by the Board of Regents of the University of Colorado to the board of directors of the Auraria Higher Education Center.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Could the University of Colorado transfer these properties to Auraria in the absence of legislation or is additional legislation necessary?
My conclusion is "no."
2. What impact, if any, would existing arrangements between the University of Colorado and the Denver Urban Renewal Authority have on the way in which transfer of these properties is accomplished?
 My conclusion is that the transfer of title based upon title held by the regents would leave the property subject to the interests of the Denver Urban Renewal Authority, established by the agreements between the regents and DURA.
3. In effecting the recommended transfer, would the University of Colorado have to be compensated for its interest in the subject properties?
 My conclusion is that the payment of compensation for such property is a question for the legislature to determine.
ANALYSIS
The property to which reference is made is that property east of Cherry Creek which is presently owned by the regents of the University of Colorado, including facilities operated as the University of Colorado at Denver and two parcels of land acquired from the Denver Urban Renewal Authority ("DURA") in November of 1973. The Administration Building, East Classroom Building and Bromley Building were owned and used by the University of Colorado at the time of the adoption of the Skyline Urban Renewal Project by DURA in 1967. That property was identified as a portion of Block 20 in the Urban Renewal Plan and was exempted from acquisition by DURA, although located within the boundaries of the area to be redeveloped, because the structures or uses were in conformity with the urban renewal plan. The plan designated Block 20 and Block 21 as "General Commercial, uses such as a school of higher education and other supporting facilities such as parking structures, restaurants and similar service establishments." (Skyline Urban Renewal Plan C.1b.(2)).
The exempted University of Colorado property was the subject of a declaration of covenants which was filed in the office of the clerk and recorder of the City and County of Denver on November 23, 1973. This document declared the property to be subject to the Skyline Urban Renewal Plan until December 31, 1995, and also contained an anti-discrimination covenant, which was not limited in time.
In November of 1973 the University of Colorado also acquired from the Denver Urban Renewal Authority Block 21 and another parcel which is described as parcel 08 of Block 20 in the urban renewal plan. These parcels have not yet been developed. Leasing arrangements were made by the regents with DURA at the time of acquisition but it appears that those leases have expired.
Covenants in the deed from DURA to the University of Colorado for these parcels, recorded on November 21, 1973, require the use of the property in accordance with the Skyline Urban Renewal Plan until December 31, 1995 and prohibit discrimination. In addition, DURA reserved a right of reentry for condition broken if the established time schedule for redevelopment was not met.
An agreement for sale, also dated November 21, 1973, which is expressly stated not to be merged with the deed, established a schedule for planning and development, with construction to begin no later than July 1, 1976. This date was extended to November 1, 1978 by DURA in a letter dated June 2, 1976 to the chancellor of the University of Colorado at Denver. Although the property apparently has not been developed as required, DURA has not at this time taken legal action to enforce the right of reentry reserved in the deed. The agreement for sale also contains a provision requiring prior approval by DURA if sale or transfer of the property is made before completion of the improvements. (Art. V, section 2).
Article 70 of title 23, adopted in 1974 by the Colorado legislature, established the Auraria Higher Education Center, which includes "land, physical plant and facilities necessary to accommodate and house Metropolitan state college, the university of Colorado at Denver, and the community college of Denver, Auraria campus. . . ." C.R.S. 1973, 23-70-101(1)(b) (1978 Cum. Supp.).
In C.R.S. 1973, 23-70-104(1)(a) the legislature established the boundaries of the Auraria Center while defining one of the duties of the Auraria Board as the duty:
 To plan, construct, own, lease, operate, maintain, and manage all of the physical plant, facilities, buildings, and grounds in the center (except that land owned at the Auraria center by the regents of the university of Colorado shall continue under such ownership but shall be maintained and managed in a similar manner to the other facilities in the Auraria center) and such additional land and facilities as the general assembly may from time to time designate to be part of the center and to accept and hold for the use of the center and its constituent institutions such property as was designated or used prior to May 13, 1974, for purposes of the center or its constituent institutions. . . .
Since all the property in question was acquired by the University of Colorado prior to May 13, 1974, it is designated as part of the Auraria Center. The statute states that title to land owned by the regents is to continue to be held in the name of the regents. Therefore, it would be contrary to the plain language of the statute for the regents of the University of Colorado to transfer ownership of the described property. Legislative authorization is required for such a transfer, since a public entity does not have the power to act in contravention of existing statutes.
A transfer of title by legislative action to the Auraria Board, continuing the use of the land and facilities as a part of the Auraria Higher Education Center, would be consistent with the covenants incorporating the Skyline Urban Renewal Plan, which specifies use of the property for purposes "such as a school of higher education and other supporting facilities."
Any title based upon the deed held by the regents would be subject to the interests of DURA in redevelopment and use as established in the deed, agreement for sale and declaration of covenants. There is some question whether the transfer of bare title from one state entity to another, with no change in use and no compensation would give rise to any cause of action by DURA based upon the requirement of "prior approval" in the purchase agreement between DURA and the regents. However, to avoid potential controversy, it is advised that the consent of DURA be obtained prior to any change of title, whether or not compensation is paid to the regents.
The University of Colorado operates under the authority of article VIII, § 5(1) of the Colorado Constitution, which establishes the University of Colorado as a state institution of higher education, with its management "subject to the control of the state, under the provisions of the constitution and such laws and regulations as the general assembly may provide. . . ."
Section 5(2) of this article provides that:
 The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law.
Section 12 of article IX of the constitution establishes the Board of Regents of the University of Colorado, and article 20 of title 23 contains the powers of the Board of Regents. C.R.S. 1973, 23-20-121 expressly places under the control of the regents "all moneys which arise from the sale of public lands belonging to the university of Colorado . . ."
These provisions of the constitution expressly reserve in the legislature the power to establish the scope of authority of governing boards of institutions of higher education. When such power is conferred by the constitution on the legislature, it may be exercised by the legislature regardless of the previous exercise of such power by other entities under constitutional or statutory authority. See de'Sha v. Reed,194 Colo. 367, 572 P.2d 821 (1977).
Public officials hold property as trustees for public purposes, and not for private benefit. School District No. 1 of MorganCounty v. School Planning Comm., 164 Colo. 541, 437 P.2d 787
(1968); Hazlett v. Gaunt, 126 Colo. 385, 250 P.2d 188
(1952); Newt Olson Lumber Co. v. School District,83 Colo. 272, 263 P. 723 (1928); People ex rel. Elder v.Sours, 31 Colo. 369, 74 P. 167 (1903); Florman v.School District, 6 Colo. App. 319, 40 P.2d 469 (1895). The regents, like school district directors and county commissioners, are public officials, whose duties and powers are established by the constitution and the law. (Art. VIII, § 5, art. IX, §12, Colorado Constitution; title 23, art. 20, C.R.S. 1973.)
Although the Colorado courts have not dealt directly with the issue of legislative transfer of title to land without compensation in situations involving institutions of higher education, the question has been considered with respect to ownership of land by school districts. School districts are established by the constitution (art. IX, § 15) and local boards of directors are vested with the "control of instruction" in the public schools. School district property is paid for by tax levies authorized by statute. C.R.S. 1973, 22-42-101 etseq. In Hazlett v. Gaunt, supra, a case involving the transfer of school facilities from one school district to a newly organized school district, the court quoted with approval the language of Florman v. SchoolDistrict, supra.
 The entire control of schools and school property is in the state, to be exercised as it may see fit, subject to the requirements and restrictions contained in the Constitution.
As early as 1903 the Colorado courts recognized that subsequent governmental changes may deprive a political entity of property paid for by the taxpayers of the jurisdiction, People exrel. Elder v. Sours, supra. The court reiterated that conclusion in School District No. 1 of Morgan County v.School Planning Comm., supra. The court recognized in Associated Students of the University of Colorado v.Regents of the University of Colorado, 189 Colo. 482,543 P.2d 59 (1975), that properly drafted legislation could modify powers of the University of Colorado.
Legislative determination of payment for a transfer of title to the property involved, if properly enacted, would be controlling, and payment would not necessarily have to be made to the University of Colorado for transfer of title to another state entity. However, because it could be argued that such a transfer is a "sale" within the meaning of C.R.S. 1973, 23-20-121, it would be advisable for any such legislation to state expressly whether or not compensation is to be paid to the university upon such transfer of title.
SUMMARY
1. Legislative action is necessary to transfer title of the property in question to the Auraria Board.
2. The transfer of title based upon title held by the regents would leave the property subject to the interests of DURA established by the agreements between the regents and DURA. Therefore, prior to any transfer of title, appropriate clarification and arrangements should be established with DURA.
3. Properly drafted legislation could divest the University of Colorado of property held for its public purposes and the payment of compensation for such property would be a question of policy for the legislature to determine.
Very truly yours,
 J.D. MacFARLANE Attorney General
EDUCATION, HIGHER PROPERTY, PUBLIC LEGISLATURE
C.R.S. 1973, 23-70-101
C.R.S. 1973, 23-70-104
C.R.S. 1973, 23-20-121
Colo. Const. art. VIII, § 5
Colo. Const. art. IX, § 12
LEGISLATIVE BRANCH House of Representatives HIGHER EDUCATION, DEPT. OF University of Colorado Auraria Campus
Legislation is required for the University of Colorado to transfer real property to Auraria. Transfer of title would convey property subject to covenants with DURA. The legislature may by statute direct the transfer of C.U. land and provide for disposition of the proceeds.