Calvin M. Frazier Commissioner of Education Colorado Department of Education 201 E. Colfax Avenue Denver, Colorado 80203
Dear Commissioner Frazier:
This opinion letter is in response to your July 14, 1986 letter, in which you inquired whether local school districts could expend funds to support litigation asserting the unconstitutionality of the statute under which they receive state funding for public education, i.e., the Public School Finance Act, sections 22-50-101 to 117, C.R.S. (1973 1985 Supp.) (hereinafter "the PSFA.")
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general's opinion presents the following question:
Can local school districts expend funds to support litigation asserting the unconstitutionality of the PSFA?
 I find no authority under current Colorado law for such expenditures by school districts.
ANALYSIS
Your request for an attorney general's opinion arises in part from legislative inaction following the supreme court's decision in Lujan v. Colorado State Board of Education, 649 P.2d 1005
(Colo. 1982). In Lujan, a bare majority of the court upheld the constitutionality of the PSFA against attack on equal protection grounds. In a special concurrence, however, Justice Erickson noted:
 As the majority opinion implies, the Colorado school finance system is not without fault and should be revised by the General Assembly to correct the disparity in the educational opportunities which are available in the different counties and school districts in Colorado. . . . Both dissenting opinions fairly and accurately detail valid reasons for the General Assembly to formulate amendments to the school financing plan to correct its deficiencies. . . . I would not, [however], under the rational basis test for equal protection, substitute our judgment for that of the legislature in this difficult area without giving it an opportunity to correct the deficiencies presently inherent in the system.
Id. at 1025-26.
Since Lujan, the legislature has not amended the PSFA in any substantial manner. Recently, school districts were asked, in a July 13, 1986 letter from Western Services Systems, Inc., to contribute $.85 per student for each of 3 years in support of state court litigation attacking the legality of the PSFA. Even if school districts do not eventually choose to be plaintiffs, their contributions would be used to finance the costs of the litigation.
School districts have only those powers expressly conferred on them by the constitution or statutes and such incidental powers as are necessarily implied from those specifically granted.Union High School District No. 2 v. Paul, 105 Colo. 93,95 P.2d 5 (1939), Jacobs v. Fremont RE-1 SchoolDistrict, 697 P.2d 414 (Colo.App. 1984). SeeBoard of County Commissioners v. Love, 172 Colo. 121,470 P.2d 861 (1970), Board of County Commissioners v. City County of Denver, 194 Colo. 252, 571 P.2d 1094 (1977). Article IX, sections 2 and 15 of the Colorado Constitution require the maintenance of at least one public school in each school district and vest in local boards of education the control of instruction. The parameters of school district authority are otherwise set forth in sections 22-32-103, 22-32-109 and22-32-110, C.R.S. (1973 1985 Supp.). I can discern no intent in the constitution or in the statutes to permit school districts to finance litigation except when they are acting pursuant to their authority to "sue or be sued," section 22-32-101, C.R.S. (1973).
The issue then is whether school districts may act, pursuant to their authority to "sue and be sued," to challenge the legality of the PSFA. This, in turn, depends upon whether the constitution or the legislature has created a legally protected interest for school districts and hence granted them standing to sue. Courts of other jurisdictions are divided over this question.Compare Buse v. Smith 74 Wis.2d 550,247 N.W.2d 141 (1976) (standing not found); East Jackson PublicSchools v. Michigan, 133 Mich. App. 132, 348 N.W.2d 303
(1984) (same); with Seattle School District No. 1v. Washington, 90 Wn.2d 476, 585 P.2d 71 (1978) (standing found); Washakie County School District No. One v.Herschler, 606 P.2d 310 (Wyo. 1980) (same). One court recognized:
 It is difficult to imagine a greater interest in the outcome of litigation than that of . . . [the school] District. The interests of the District are not theoretical; they involve actual financial constraints imposed upon the District by the challenged system itself. . . . [W]hat could be more fundamental to the maintenance of schools, and an educational program, than an action seeking to obtain sufficient revenue to keep a district operating with its basic programs intact so as to comply with [constitutional mandates]. . .? What could be more fundamental than [the] . . . District's need for review of a system of public school financing that undermines its means of existence?
Seattle School District No. 1 v. Washington, supra, 585 P.2d at 81-82.
This statement eloquently sets forth the rationale favoring standing for school districts here. In Colorado, however, political subdivisions of the state and their officers lack standing to challenge the constitutionality of state statutes directing their performance. E.g., Board of CountyCommissioners v. Fifty-first General Assembly, 198 Colo. 302,599 P.2d 887 (1979). This principle is a corollary of the status of political subdivisions, which exist only for the convenient administration of state government and are created to carry out the will of the state. Denver Urban Renewal Ass'nv. Byrne, 618 P.2d 1374 (Colo. 1980). Because school districts have been characterized as "merely the instruments of state government, chosen for the purpose of effectuating its policy in relation to schools," Hazlet v. Gaunt,126 Colo. 385, 250 P.2d 188, 191 (1952), the rule has been specifically applied to them. Denver Ass'n for RetardedChildren, Inc. v. School District No. 1, 188 Colo. 310,535 P.2d 200 (1975); Denver Urban Renewal Authority v.Byrne, supra; Clear Creek School DistrictRE-1 v. Holmes, 628 P.2d 154 (Colo.App. 1981).
The only exception to this rule is where the constitution or a specific statute expressly or impliedly grants to a political subdivision the right to challenge the constitutionality of state statutes. Board of County Commissioners v. Fifty-firstGeneral Assembly, supra; Adams County Boardof County Commissioners v. Union Pacific Railroad Co.,34 Colo. App. 156, 525 P.2d 1202 (1974); School District No. 23v. School Planning Committee, 146 Colo. 241, 361 P.2d 360
(1962); Cf. Board of County Commissioners v. Cityand County of Denver, supra. Our state constitutional provisions do not, in my view, grant this right. The constitution places few, if any, restrictions on the legislature's power over school affairs. Hazlet v.Gaunt, supra; School District No. 1 v. SchoolPlanning Committee, supra. Further, the authority to "sue and be sued," section 22-32-101, C.R.S. (1973), does not, in and of itself, confer this right; suit may be brought only in conjunction with a specifically granted school district power.See Board of County Commissioners v. Love,supra; Adams County Board of County Commissionersv. Union Pacific Railroad Co., supra.
Arguably, school districts receive authority to bring this litigation by virtue of their duty "[t]o cause an educational program to be maintained and operated within or . . . outside the territorial limits of the district for the school-age children resident therein." Section 22-32-109(1)(v), C.R.S. (1985 Supp.). The powers and duties of a school district, however, must be strictly construed. Union High School District No. 2 v.Paul, supra. That the general assembly did not intend the duty to maintain an educational program to encompass the authority to challenge the legality of the PSFA is perhaps best exemplified by the language of section 22-50-103(1), C.R.S. (1985), which requires school districts, as a condition of eligibility for state equalization program support, to "accept and become subject to the terms and conditions of [the PSFA]." In my view, none of the constitutional or statutory provisions discussed above grants school districts the authority to sue here. Because school districts are powerless to finance their own challenge to the PSFA, they are also powerless to finance such litigation by others. See East Jackson PublicSchools v. Michigan, supra.
One caveat must be added to my conclusion here. The specific legal bases for the present challenge to the PSFA have not been made known to me nor have the interests to be asserted by school districts been specifically articulated to me. While I have not identified any constitutional provision or law which would create a protectable interest in school districts and would form the basis for their standing to sue, I cannot conclusively rule out the possibility that such may exist. See SchoolDistrict No. 23 v. School Planning Committee,supra; United States v. Alabama, 791 F.2d 1450
(11th Cir. 1986).
This opinion addresses only the issue of the expenditure of school district funds to support litigation challenging the PSFA. It should not be interpreted in any way to deter efforts of local and state educational leaders to pursue legislative initiatives designed to correct deficiencies of the PSFA pursuant to Justice Erickson's special concurring opinion in Lujan.
SUMMARY
Under the facts provided, I am unable to ascertain any Colorado authority permitting school districts to expend their funds in support of litigation challenging the Public School Finance Act.
Very truly yours,
 DUANE WOODARD Attorney General
SCHOOL DISTRICTS LITIGATION
Section 22-32-109(1)(v), C.R.S. (1973 1985 Supp.) Section 22-32-101, C.R.S. (1973) Sections 22-50-101 to 117, C.R.S. (1973 1985 Supp.)
Colo. Const. art. IX, secs. 2 and 15
EDUCATION, DEPARTMENT OF
School districts lack authority to finance litigation challenging the constitutionality of the Public School Finance Act, pursuant to which they receive state funding for public education.